2003-NMCA-067

68 P.3d 173

### JAMES HAMILTON CONSTRUCTION COMPANY, Plaintiff–Petitioner,

v.

### STATE of New Mexico ex rel. NEW MEXICO STATE HIGHWAY AND TRANSPORTATION DEPARTMENT, Defendant–Respondent.

No. 22,553.

Court of Appeals of New Mexico.

Jan. 31, 2003.

Certiorari Granted, No. 27,929, March 25, 2003.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, NM, for Petitioner.

Arthur J. Waskey, General Counsel, Kendall Fischer, Assistant General Counsel, Special Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

SUTIN, Judge.

{1} James Hamilton Construction Company (Hamilton) protested a construction bid award on the ground the bid was not signed. The New Mexico State Highway and Transportation Department (the Department) denied the protest on the ground the protest was untimely. The district court agreed. The Department also determined on the merits of the protest that the lack of a signature on the winning bid was not fatal. The district court did not make a ruling on this issue. We agree that the protest was not timely and affirm. We need not and therefore do not address the signature issue.

## BACKGROUND

{2} The Department solicited bids for a highway construction project. The bids were due December 1, 2000. Ten companies bid on the project, including Hamilton, FNF Construction, Inc. (FNF), and Western Mobile New Mexico, Inc. (Western Mobile). On December 15, 2000, the Department opened the bids and issued a summary of the bids received. The summary showed that the lowest combination for the packages bid on was submitted by FNF. The second lowest bid was a combination of bids for separate packages submitted by Western Mobile and Hamilton.

{3} On January 12, 2001, the Department sent a letter giving preliminary award of the contract for the entire project to FNF. The letter indicated that contract documents were being sent to FNF for signature and were required to be returned within fifteen calendar days after receipt of the letter. On January 22, 2001, Western Mobile filed a formal protest of the "apparent award" to FNF, claiming that FNF's bid was materially and mathematically unbalanced. The protest hearing was held on February 5, 2001. The vice president of Hamilton was present at and participated in the hearing. He contends it was at this hearing that he discovered FNF's bid was unsigned. On February 12, 2001, the Department denied Western Mobile's protest. On the same day, pursuant to its regulations, the Department sent an award letter to FNF. On February 16, 2001,

Hamilton filed its protest of the award to FNF, contending that FNF's bid was fatally flawed because it was unsigned. On February 23, 2001, the Department denied Hamilton's protest.

{4} The Department stated two reasons for its denial of Hamilton's protest. First, it determined Hamilton's protest was untimely. The Department noted that the bids had been opened on December 15, 2000. At that time, each bid was open for public inspection. The Department therefore determined that Hamilton had constructive knowledge of the facts supporting its protest on December 15 when the bids were opened. It found that Hamilton should have filed its protest within fifteen days of December 15 and rejected Hamilton's argument that the time should run from the day it acquired actual knowledge of the deficiency.

{5} Second, the Department determined that FNF's bid was effective despite the lack of a signature on the designated signature page of the bid. The Department noted that its regulations require a bid not "properly signed" to be rejected. However, it considered other parts of the bid papers and process including signatures elsewhere in the documents and determined that FNF was bound by its bid and that the lack of signature was simply a technical irregularity that could be waived under the circumstances.

{6} Hamilton filed its appeal in the district court, raising two issues: (1) whether the protest was untimely, and (2) whether the Department could waive the lack of a signature on the bid. After hearing arguments of counsel, the district court affirmed the Department's denial of the protest. Hamilton filed a petition for writ of certiorari in this Court, which we granted.

## DISCUSSION

{7} We address on certiorari whether the decision of the district court conflicts with statute, ordinance, or regulation. *See* Rule 12–505(D)(5)(b) NMRA 2003; *C.F.T. Dev., LLC v. Bd. of County Comm'rs,* 2001–NMCA–069, ¶ 8, 130 N.M. 775, 32 P.3d 784, *rev'd on other grounds, Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n,* 2003–NMSC–005, ¶¶ 14–17, 133 N.M. 97, 102–104, 61 P.3d 806, 811–813 (2002). On

legal questions, such as the interpretation of the Procurement Code, NMSA 1978, §§ 13–1–1 to –199 (1984, as amended through 2002), or interpretation of the Department's implementing regulations, we may, but are not required to, afford the Department's interpretation some deference. *See Johnson v. N.M. Oil Conservation Comm'n,* 1999–NMSC–021, ¶ 16, 127 N.M. 120, 978 P.2d 327.

{8} Section 13–1–172 of the Procurement Code states:

Any bidder or offeror who is aggrieved in connection with a solicitation or award of a contract may protest to the state purchasing agent or a central purchasing office. The protest shall be submitted in writing within fifteen calendar days after knowledge of the facts or occurrences giving rise to the protest.

{9} Hamilton argues that the award from which a protest is to be filed is the final award, not the preliminary award, and that it timely protested the final award to FNF because the time to protest the award did not start running until February 12, 2001. Hamilton further argues that there is no statutory right to protest a bid, but only a right to protest the solicitation or award of the contract. Hamilton's reading of the statute is too narrow and its sole focus on the award is misplaced.

{10} In reference to the distinction between a preliminary and a final award, it should be noted that Western Mobile had no trouble in using the preliminary award as the trigger for its protest. The Department entertained that protest. Under Hamilton's view, were the post-protest-hearing award letter the trigger, any aggrieved bidder could sit by and wait, as Hamilton did in this case, until other protests have been made and resolved. Then, if things do not go as hoped, there would be one more chance to protest. This tactic goes against an important goal of the Procurement Code, namely, that protests are to be made and resolved quickly and in furtherance of protecting the public fisc and of assuring the fairness of the procurement process. *See* §§ 13–1–172, –173, –175.

{11} Section 13–1–172 speaks to the entire process from solicitation to award in using

the words "in connection with," and the statutory fifteen days begin to run from the date during that process that a bidder has knowledge of facts that give rise to a protest. A Department regulation regarding the timing of protests comports with this broader view of Section 13–1–172. The regulation states:

In the event of a bidding dispute, the following procedure, including the stated time limits, shall control the award of the contract:

9.3.1 Any Contractor who has a claim against the Department or another Contractor in connection with the bidding or with the pre-award process must file a written protest with the Secretary within 15 calendar days after knowledge of the facts or occurrences giving rise thereto. Failure to file a timely written protest constitutes a waiver of the Contractor's right to protest.

18.27.2.9.3.1 NMAC 2003. This regulation applies to the bidding and pre-award processes. It is clear from both the statute and the regulation that the triggering event is the knowledge of facts or occurrences giving rise to the protest during the entire procurement process, regardless of whether the protestant is protesting the solicitation, bid, or award processes. The trigger date here was when Hamilton had knowledge that the successful bidder's bid was unsigned.

{12} The Department ruled that the time for filing a protest begins to run when the "protestant knew or should have known [of] facts upon the exercise of ordinary care." The Department held, and now argues, that Hamilton was chargeable with knowledge at the point in time that the bids were opened, read, and made available to the public for inspection. At that point, the Department held and now contends, Hamilton should have known, upon the exercise of ordinary care, that FNF's bid was unsigned. On appeal, Hamilton does not challenge the Department's interpretation of knowledge to include constructive as well as actual knowledge. We agree with the Department's view that the trigger date was the date that Hamilton should have known, upon the exercise of ordinary care, that FNF's bid was unsigned. We disagree that that date was the date the bids were opened.

### Knowledge

{13} Section 13–1–172 does not limit knowledge of the facts to actual knowledge. " 'Knowledge' does not necessarily mean 'actual knowledge,' but means knowledge of such circumstances as would ordinarily lead upon investigation, in the exercise of reasonable diligence which a prudent man ought to exercise, to a knowledge of the actual facts." *Taylor v. Hanchett Oil Co.*, 37 N.M. 606, 609, 27 P.2d 59, 60 (1933) (construing a recording statute); *accord Ambassador E. Apts., Investors v. Ambassador E. Invs.*, 106 N.M. 534, 536, 746 P.2d 163, 165 (Ct.App.1987) (construing a statute of limitations for fraud); *Rhinehart v. Nowlin*, 111 N.M. 319, 328, 805 P.2d 88, 97 (Ct.App.1990) (enforcing civil contempt of a court order). The Department properly construed "knowledge" in Section 13–1–172 to mean constructive as well as actual knowledge. An unsuccessful bidder is charged with the duty to exercise reasonable diligence to discover facts and occurrences that would provide knowledge of the actual facts or occurrences upon which to base a protest.

### Trigger Date

{14} While it is true that a bidder could discover the lack of signature on competitors' bids when the bids are opened for public inspection, we do not think a bidder should be required to peruse every bid upon bid-opening to look for deficiencies and to then file preemptive protests before any award has been made. However, once the Department makes its preliminary award, any protest that arises from facts or occurrences that an unsuccessful bidder knows or should know at the time of the preliminary award should be filed within fifteen days of the preliminary award. Hamilton should have known as of January 12, 2001, that the FNF bid was unsigned. Hamilton's protest was due no later than January 27, 2001, which was fifteen days after the preliminary award letter. The protest, filed on February 16, 2001, was untimely.

## CONCLUSION

{15} We affirm the district court.

{16} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge, and IRA ROBINSON, Judge.