1999-NMSC-021

978 P.2d 327

Timothy B. JOHNSON, Trustee for Ralph A. Bard, Jr., Trust u/a/d February 12, 1983, et al., Plaintiffs–Appellees,

v.

NEW MEXICO OIL CONSERVATION COMMISSION, Defendant–Appellant.

Timothy B. Johnson, Trustee for Ralph A. Bard, Jr., Trustee u/a/d February 12, 1983, et al., Plaintiffs–Appellees,

v.

Burlington Resources Oil & Gas Company, Defendant–Appellant.

Nos. 25,061, 25,062.

Supreme Court of New Mexico.

April 13, 1999.

Marilyn S. Hebert, Special Assistant Attorney General, Santa Fe, Kellahin & Kellahin, W. Thomas Kellahin, Santa Fe, for Appellants.

Gallegos Law Firm, P.C., J.E. Gallegos, Jason E. Doughty, Santa Fe, for Appellee.

## OPINION

MINZNER, Chief Justice.

{1} This is an appeal from the district court's review of an order by the New Mexico Oil Conservation Commission, which increased the spacing requirements for deep wildcat gas wells in certain areas of the state. Specifically, the Commission and the real party in interest, Burlington Resources Oil & Gas Co., appeal the district court's ruling that the order is without effect as to Timothy P. Johnson and other individual holders (Holders) of working interests and operating rights affected by the order.

{2} After the Commission issued its order, Holders timely filed with the Commission an application for rehearing, but the Commission failed to act upon the application within ten days. Holders then appealed to the district court, naming the Commission and Burlington as defendants. The district court found in favor of Holders, ruling that the order, as against them, was without ef-

fect. The Commission and Burlington now appeal to this Court.

{3} The question we address in this appeal is whether the Commission violated the New Mexico Oil and Gas Act (OGA), NMSA 1978, §§ 70-2-1 to -38 (1935, as amended through 1996, prior to 1998 amendment), and its implementing regulations by issuing its order without first providing Holders with actual notice of the Commission's proceedings on Burlington's application for an increase in gas-well spacing requirements. We conclude that the Commission's order is invalid with respect to Holders, because Holders were not afforded reasonable notice of the proceedings as required by the OGA and its implementing regulations. Our conclusion that the Commission's order is invalid with respect to Holders makes it unnecessary for us to reach the question whether the Commission's order should be vacated on other grounds. We affirm the district court's judgment.

## I.

{4} The parties involved in this dispute include Holders, Burlington, and the Commission. In all, Holders control over an eighty-percent working interest in the east half and southwest quarter of Section 9, Township 31 North, Range 10 West, San Juan County, New Mexico (Section 9). Burlington is also a working-interest owner in Section 9. The Commission is a creature of the OGA. *See* § 70-2-4. Pursuant to the OGA, the Commission regulates certain aspects of oil and gas operations throughout the state.

{5} The Oil Conservation Division, which is not a party to this suit, also is a creature of the OGA. *See* § 70-2-5. The Division has

jurisdiction, authority and control of and over all persons, matters or things necessary or proper to enforce effectively the provisions of [the OGA] or any other law of this state relating to the conservation of oil or gas and the prevention of waste of potash as a result of oil or gas operations.

Section 70-2-6(A). The Commission has "concurrent jurisdiction and authority with the [D]ivision to the extent necessary for the

[C]ommission to perform its duties as required by law." Section 70–2–6(B).

{6} This case concerns the Commission's modification of Oil and Gas Rule 104, which addresses the spacing of wildcat gas wells. From 1950 until the time of this suit, Rule 104 had required all wildcat gas wells in the San Juan Basin to be located on drilling tracts consisting of 160 contiguous surface acres. *See* Well Spacing; Acreage Requirements for Drilling Tracts, N.M. Oil Conservation Comm'n, Rule 104(c) (Jan. 1, 1950); Well Spacing; Acreage Requirements for Drilling Tracts, N.M. Oil Conservation Comm'n, Rule 104(b) (Feb. 1, 1951); Well Spacing: Acreage Requirements for Drilling Tracts, Oil Conservation Div., Energy, Minerals, & Natural Resources Dep't, 19 NMAC 15.C.104.B(2)(a) (May 25, 1964, as amended through Feb. 1, 1996, prior to June 30, 1997 amendment).

{7} Rule 104 defines "wildcat well." Since 1996, the rule has provided the following definition for a "wildcat well" in the San Juan Basin:

> Any well which is to be drilled the spacing unit of which is a distance of 2 miles or more from:
>
>> (i) the outer boundary of any defined pool which has produced oil or gas from the formation to which the well is projected; and
>>
>> (ii) any other well which has produced oil or gas from the formation to which the proposed well is projected. . . .

19 NMAC 15.C.104.A(1)(a) (Feb. 1, 1996).

{8} Beginning in June 1996, Burlington sent correspondence to Holders, seeking either to purchase or to farm-out Holders' acreage in Section 9, among other areas. Specifically, Burlington sought to drill high-risk deep wildcat gas wells in these areas. Burlington also planned to file an application with the Commission for the purpose of changing the Rule 104 spacing requirement from 160 to 640 acres for deep wildcat gas wells in the San Juan Basin. On February 27, 1997, Burlington filed its application, which was docketed as Commission Case No. 11745.

{9} Pursuant to Burlington's application in Case No. 11745, the Commission held a public hearing on March 19, 1997. At this hearing, Burlington's counsel informed the Commission that, by certified mail, Burlington had provided personal notice of the application and the hearing to nearly 200 operators in the San Juan Basin. For its part, the Commission provided notice by publication and afforded personal notice to 267 parties on its own mailing list. Apparently none of the Holders were on the Commission's mailing list, for none of them received personal notice from the Commission.

{10} Burlington did not provide personal notice to any of the Holders on either the application or the hearing, even though Burlington had actual knowledge of all of the Holders' names, addresses, and Section 9 interests long before it had filed its application. In fact, at the time of its filing, Burlington had been remitting overriding royalty payments to each of the Holders on a monthly basis, and Burlington had been engaged in litigation against Holders since 1992. In addition, Burlington not only had been seeking to purchase or to farm-out Holders' acreage in Section 9, the company had also selected Section 9 as the location for one of its initial deep-drilling test wells and had prepared a detailed Authority for Expenditure for this well. Further, Burlington had maintained a computerized database of the names and addresses of Holders and could have given them actual notice of its application and the proceedings thereon. Despite Burlington's actual knowledge of and involvement with Holders and their respective Section 9 working interests, Burlington's counsel, during the Commission hearing, testified that, "to the best of [Burlington's] knowledge and belief[,] there [was] no opposition to having the Commission change [Rule 104] and allow deep gas to be developed on 640–acre spacing."

{11} During the Commission proceedings, only one party, Amoco Production Co., voiced some opposition to Burlington's application. Nonetheless, Amoco did not object to 640–acre spacing outright. Rather, believing it to be premature to establish a deep wildcat gas-well spacing order for the entire San

Juan Basin, Amoco merely suggested "use of an Exploratory spacing order which would space a drillsite on 640 acres to be revisited after data was accumulated." Amoco is not a party to the suit before us.

{12} At the Commission hearing, Burlington's senior staff landman testified that Burlington had notified approximately 198 out of 315 operators in the San Juan Basin. The landman also testified that, apart from Amoco's suggestion, he was not aware of any other suggestions on Burlington's application. In fact, the landman explained, "We have received support."

{13} On June 5, 1997, the Commission entered its Order No. R–10815, which concluded, among other things, that Division Rule 104 should be amended on a permanent basis to increase the spacing requirements for deep wildcat gas wells in the San Juan Basin to 640 acres. *In re Burlington Resources Oil & Gas Co.,* N.M. Oil Conservation Comm'n Case No. 11745 (June 5, 1997) (Order No. R–10815). On June 11, 1997—six days after the Commission issued its order—Burlington filed an application with the Division, seeking to impose a compulsory pooling of Holders' interests in the east half and southwest quarter of Section 9 for a deep wildcat gas well proposed by Burlington. Obtaining Commission Order R–10815 was a condition precedent to Burlington's initiation of compulsory pooling proceedings against Holders, for under Rule 104 as extant prior to June 5, 1997, Burlington could not have petitioned the Division to impose a compulsory pooling order for 640 acres. *See* 19 NMAC 15.C.104.B(2)(a) (Feb. 1, 1996, prior to June 30, 1997 amendment) (requiring all wildcat gas wells drilled in the San Juan Basin to be located on drilling tracts of 160 contiguous surface acres).

{14} On June 24, 1997, Holders timely filed with the Commission an Application for Rehearing of Order No. R–10815. When the Commission failed to act upon the application within ten days, the application was deemed denied. · *See* § 70–2–25(A). Holders then properly appealed to the district court, nam-

ing the Commission and Burlington as defendants. Holders also moved for a stay of Order No. R–10815 for the duration of the appeal, and the district court granted the motion as to Holders only. Rule 104 was finally amended on June 30, 1997. *See* 19 NMAC 15.C.104.B(2)(b) (June 30, 1997) (requiring deep wildcat gas wells drilled in the San Juan Basin to be located on drilling tracts of 640 contiguous surface acres).

{15} In its Opinion and Final Judgment, the district court found in favor of Holders, ruling that, "[k]nowing of its plan to pool the interests of [Holders] for a wildcat well on 640–acre spacing and knowing the identities and whereabouts of [Holders], Burlington's failure to provide personal notice to them of the spacing case proceeding ... deprived [Holders] of their property without due process of law." Accordingly, the district court ruled that the order, as against Holders, was without effect. The Commission and Burlington now appeal to this Court, which has jurisdiction under Section 70–2–25(B).[1]

## II.

{16} This Court conducts a whole-record review of the Commission's factual findings. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n,* 114 N.M. 103, 114, 835 P.2d 819, 830 (1992). On legal questions such as the interpretation of the OGA or its implementing regulations, we may afford some deference to the Commission, particularly if the question at hand implicates agency expertise. *See generally Regents of Univ. of N.M. v. New Mexico Fed'n of Teachers,* 1998–NMSC–020, ¶ 17, 125 N.M. 401, 962 P.2d 1236. "However, the [C]ourt may always substitute its interpretation of the law for that of the [Commission] 'because it is the function of courts to interpret the law.' " *Fitzhugh v. New Mexico Dep't of Labor,* 1996–NMSC–044, ¶ 22, 122 N.M. 173, 922 P.2d 555 (quoting *Morningstar Water Users Ass'n v. New Mexico Pub. Util. Comm'n,* 120 N.M. 579, 583, 904 P.2d 28, 32 (1995)).

1. We do not consider the effect, if any, of the changes brought about by the 1998 amendment to Section 70–2–25(B) because this appeal was taken well before the effective date of that amendment.

{17} At the outset, we note that the district court held that Holders were denied due process of law under the United States and New Mexico Constitutions because they were not given personal notice of the Commission's proceedings on Burlington's application for increased spacing requirements. We agree with the district court that the failure to provide Holders with actual notice of the proceedings on Burlington's application for increased spacing requirements is dispositive. We do not agree, however, that it is necessary to reach the question whether this failure amounts to a violation of Holders' constitutional rights to due process. "Courts will not decide constitutional questions unless necessary to a disposition of the case." *Huey v. Lente*, 85 N.M. 597, 598, 514 P.2d 1093, 1094 (1973); *cf. Garcia v. Las Vegas Med. Ctr.*, 112 N.M. 441, 444, 816 P.2d 510, 513 (Ct.App.1991) ("There would be no need to decide what federal procedural due process required if the plaintiffs could obtain the desired relief from an [order requiring] compliance with state law."). As we explain below, our disposition in this case only requires interpretation of the OGA and the Commission's procedural rules. Nevertheless, we are guided by the canon of statutory construction that "if a statute is susceptible to two constructions, one supporting it and the other rendering it void, a court should adopt the *construction which will uphold its constitutionality.*" *Huey*, 85 N.M. at 598, 514 P.2d at 1094. We apply this canon to the Commission's procedural rules in the same manner that we apply it to a statute. *See Wineman v. Kelly's Restaurant*, 113 N.M. 184, 185, 824 P.2d 324, 325 (Ct.App.1991) (applying a canon of construction used to interpret statutes to an interpretation of a rule adopted by the Workers' Compensation Administration). In applying this canon, we are also mindful of the holding in *Uhden v. New Mexico Oil Conservation Comm'n*, 112 N.M. 528, 817 P.2d 721 (1991), which relied on principles of due process to conclude that notice had been constitutionally deficient.

{18} In reaching its holding, the *Uhden* court noted that "[t]he essence of justice is largely procedural." *Id.* at 530, 817 P.2d at 723. We reaffirm this principle today. In this case, however, we do not rely on the *Uhden* court's constitutional rationale. *Cf. State ex rel. Hughes v. City of Albuquerque*, 113 N.M. 209, 210, 824 P.2d 349, 350 (Ct.App. 1991) ("[The] violation of a state law requiring specific procedures does not necessarily constitute a violation of constitutional due process."); *see also* Bernard Schwartz, *Administrative Law* § 5.2, at 204 (2d ed.1984). Instead, we conclude that Holders are entitled to relief because the notice procedures required by the OGA and the Oil and Gas rules were not followed. *See* Additional Notice Requirements (Rule 1207), Oil Conservation Div., Energy, Minerals, & Natural Resources Dep't, 19 NMAC 15.N.1207.D (Feb. 1, 1996) ("Evidence of failure to provide notice as provided in this rule may, upon a proper showing be considered cause for reopening the case."); *cf. Hughes*, 113 N.M. at 210, 824 P.2d at 350 (concluding that a party "may be entitled to relief if the procedures mandated by city ordinance were not followed"); *Atlixco Coalition v. Maggiore*, 1998–NMCA–134, ¶ 15, 125 N.M. 786, 965 P.2d 370 (concluding that an administrative agency "is required to act in accordance with its own regulations"). Accordingly, we reject the Commission's contention that it provided the requisite notice for a hearing on a rule amendment, as well as Burlington's contention that Holders were not entitled to actual notice of the proceedings under the OGA.

{19} The relevant statutory notice provisions in the OGA are contained in Sections 70–2–23 and 70–2–7. Section 70–2–23 imposes a "reasonable notice" requirement for all oil and gas hearings. This section provides, in pertinent part:

> Except as provided for herein [i.e., exceptions for emergencies], before any rule, regulation or order, including revocation, change, renewal or extension thereof, shall be made under the provisions of this act, a public hearing shall be held at such time, place and manner as may be prescribed by the [D]ivision. The [D]ivision shall first give *reasonable notice* of such hearing (in no case less than ten days, except in an emergency) and at any such hearing any person having an interest in the subject

matter of the hearing shall be entitled to be heard.

(Emphasis added).

{20} Section 70–2–7 provides: "The [Division] shall prescribe by rule its rules of order or procedure in hearings or other proceedings before it under the [OGA]." Although the text of Section 70–2–7 does not expressly mention the word "notice," the Division, pursuant to the authority in this section, has adopted rules establishing notice requirements for oil and gas hearings.

{21} In terms of publication notice for an oil and gas hearing, the Division has adopted the following rule:

> Notice of each hearing before the Commission and before a Division Examiner shall be by publication once in accordance with the requirements of Chapter 14, Article 11, N.M.S.A.1978, in a newspaper of general circulation in the county, or each of the counties if there be more than one, in which any land, oil, gas, or other property which is affected may be situated.

Publication of Notice of Hearing, Oil Conservation Div., Energy, Minerals, & Natural Resources Dep't, 19 NMAC 15.N.1204 (Feb. 1, 1996). The referenced statutory provision mandates the following:

> Any notice or other written matter whatsoever required to be published in a newspaper by any law of this state, or by the order of any court of record of this state, shall be deemed and held to be a legal notice or advertisement within the meaning of [14–11–1 to 14–11–4, 14–11–7, 14–11–8 NMSA 1978].

NMSA 1978, § 14–11–1 (1937) (bracketed material in original).

{22} The Division has also adopted additional notice rules for specific situations. *See* 19 NMAC 15.N.1207. One such situation involves applications that may affect a property interest of other individuals or entities: "In cases of applications not listed above, the outcome of which may affect a property interest of other individuals or entities: (a) Actual notice shall be given to such individuals or entities by certified mail (return receipt requested)." 19 NMAC 15.N.1207.A(11).

■ {23} Pursuant to the rules promulgated under Section 70–2–7, Burlington and the Commission provided notice by publication. Although the notice by publication satisfied a necessary component of the statutory notice requirements, it was by no means sufficient. Section 7–2–23 of the OGA requires "reasonable notice" as a condition precedent to a hearing. This "reasonable notice" mandate should circumscribe whatever Division rules are promulgated for the purpose of notifying interested persons.

■ {24} In terms of the rules, we note that, at the time of its filing, the application, if approved, would have affected Holders' interests in Section 9. Specifically, we note that the increased spacing requirements would have expanded the scope of Holders' production-cost liability to include proportional allocations for wildcat gas wells drilled anywhere in a 640–acre area, rather than in a mere 160–acre area, and that Holders would have been able to avoid these unforeseen allocations only if they limited their rights to obtain production royalty payments in the future. *See* § 70–2–17(C). Furthermore, if the Commission increased the spacing requirements, a subsequent pooling order—if granted—would have precluded the owners from drilling deep wildcat gas wells anywhere else on Section 9. *See* 19 NMAC 15.C.104.B(2)(b) (June 30, 1997).

{25} If Burlington succeeded in pooling Holders' Section 9 property interests, and if Holders intended to enjoy the privileges of development and ensure receipt of full royalties in the future, they would have been compelled to contribute to the drilling costs associated with Burlington's high-risk wildcat well. In fact, as Holders maintain, they would have had to bear a higher percentage of the costs in aggregate than even Burlington would have had to bear. Although Burlington was well aware of these facts, it refused to provide Holders with actual notice of the proceedings on its application for increased spacing. Given that Burlington intended to affect Holders' Section 9 property interests with a subsequent pooling order, under Rule 1207.A(11) Holders were entitled to actual notice of the spacing application.

Because neither Burlington nor the Commission provided Holders with actual notice of the proceedings on the spacing application, Holders were denied the reasonable notice that the OGA and its implementing regulations required.

■ {26} Burlington asserts that Rule 1207.A(11) only applies to "adjudicatory" proceedings and has no application in this case because the proceedings in this case concern a rule amendment rather than an adjudication. To support the assertion that actual notice was not required for a rule amendment, Burlington and the Commission expend much effort in distinguishing *Uhden*, 112 N.M. at 530, 817 P.2d at 723, on the ground that the order in that case "was not of general application, but rather pertained to a limited area ... [and][t]he persons affected were limited in number." Upon analysis, however, it becomes clear that this distinction is not at all dispositive. It is well established that notice requirements are determined on the basis of " 'the character of the action, rather than its label.' " *Miles v. Board of County Comm'rs*, 1998-NMCA-118, ¶ 9, 125 N.M. 608, 964 P.2d 169 (quoting *Harris v.. County of Riverside*, 904 F.2d 497, 501–02 (9th Cir.1990)), *cert. denied*, No. 25,292, 126 N.M. 107, 967 P.2d 447 (1998). As one commentator explains:

> [N]o test can draw anything like a mathematical line between rulemaking and adjudication. . . . [A]n adjudication may be based upon a new rule of law that is announced for the first time by the deciding tribunal. Conversely, a rule may have an effect on particular rights comparable to a decision in an adjudicatory proceeding involving the given parties.

Schwartz, *supra*, § 4.15, at 190 (footnote omitted); *accord* 2 Am.Jur.2d *Administrative Law* § 155, at 176 (1994); 4 Jacob A. Stein et al., *Administrative Law* § 33.01[1], at 33–3 n. 2 (1998); *cf. Uhden*, 112 N.M. at 532–33, 817 P.2d at 725–26 (Montgomery, J., dissenting) (asserting that "the notoriously slippery distinction between rulemaking and adjudication is not particularly helpful in this case"). On the facts presented here, we cannot conclude that the Commission's order is accurately characterized as simply a rule

amendment as it applies to Holders. Moreover, neither the "reasonable notice" requirement in Section 70–2–23 of the OGA nor the notice requirements in Rule 1207.A are expressly limited to adjudications.

{27} In *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599, we observed the following rules of statutory interpretation:

> The first rule is that the "plain language of a statute is the primary indicator of legislative intent." *General Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). Courts are to "give the words used in the statute their ordinary meaning unless the legislature indicates a different intent ." *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). The court "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written." [*Burroughs v. Board of County Comm'rs*, 88 N.M. 303, 306, 540 P.2d 233, 236 (1975) ].

These canons of statutory construction apply to regulatory and rule interpretation as well. *See Wineman*, 113 N.M. at 185, 824 P.2d at 325.

{28} The language of Section 70–2–23 of the OGA plainly states that, except for emergencies, the requirement of "reasonable notice" applies to hearings regarding "any rule, regulation or order, including revocation, change, renewal or extension thereof." In addition, Rule 1207.A expressly provides that "[e]ach applicant for hearing before the Division or Commission shall give additional notice as set forth below." The rule makes no mention of "adjudication" or "rulemaking," or other words of similar import. The plain language of Rule 1207.A(11) applies to "cases of applications not listed above, the outcome of which may affect a property interest of other individuals or entities." The only limitations on the phrase "cases of applications" are the modifying phrases "not listed above" and "the outcome of which may affect a property interest of other individuals or entities." Because an application for increased spacing requirements is not listed earlier in the rule, and because the spacing order in this case

clearly would affect Holders' Section 9 property interests, this case is governed by the plain language of Rule 1207.A(11).

{29}   After careful review of the administrative record, we are not convinced that Burlington or the Commission have substantially complied with the "reasonable notice" requirements of the OGA or the specific notice requirements of Rule 1207.A(11) in this case. *See* 19 NMAC 15.N.1207.C ("At each hearing, the applicant shall cause to be made a record ... that the notice provisions of this Rule 1207 have been complied with...."). Our conclusion that substantial compliance is lacking makes it unnecessary for us to reach the issue whether strict compliance is required in this instance. *Cf. Green Valley Mobile Home Park v. Mulvaney*, 1996–NMSC–037, ¶¶ 10–11, 121 N.M. 817, 918 P.2d 1317 (discussing circumstances in which strict compliance with mandatory notice provisions of a statute is required).

{30}   The record shows that (1) Burlington had actual knowledge of Holders' interests in Section 9, (2) Burlington targeted Holders' interests long before it applied for increased well-spacing requirements, (3) Burlington intended to affect Holders' interests with a subsequent pooling order, (4) Burlington had actual knowledge of Holders' identities and whereabouts, and (5) Burlington had regular contacts with Holders. Under these circumstances, neither Burlington nor the Commission have shown that sending actual notice to Holders would have been more difficult than sending actual notice to the other persons with potentially affected property interests whom the company chose to notify in this case. Indeed, Burlington's prior dealings with Holders would appear to have made it easier to notify Holders than to notify others. Because Holders were not provided with actual notice under these circumstances, we conclude that Burlington and the Commission did not comply with the notice requirements of the OGA and its implementing regulations, and this failure to comply renders the Commission's order void with respect to Holders. Thus, we need not reach the issue whether the Commission's order should be voided on other grounds.

### III.

{31}   Because Burlington and the Commission did not comply with the notice requirements of the OGA and its implementing regulations, we conclude that the Commission's Order No. R–10815 concerning the spacing requirements for deep wildcat gas wells in the San Juan Basin is void with respect to Holders. Accordingly, we affirm the district court's final judgment in this matter.

{32}   **IT IS SO ORDERED.**

BACA, FRANCHINI and SERNA, JJ., concur.

