# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>February 24, 2016</u>

**NO. 33,451**

**EARTHWORKS' OIL & GAS ACCOUNTABILITY PROJECT and NEW MEXICO WILDERNESS ALLIANCE,**

Petitioners,

v.

**NEW MEXICO OIL CONSERVATION COMMISSION,**

Respondent,

and

**NEW MEXICO OIL & GAS ASSOCIATION,**

Intervenor.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sheri A. Raphaelson, District Judge**

New Mexico Environmental Law Center
Eric Jantz
R. Bruce Frederick
Douglas Meiklejohn
Jonathan Block
Santa Fe, NM

New Mexico Wilderness Alliance
Judith Calman
Albuquerque, NM

for Petitioners

Energy, Minerals & Natural Resources Department
William R. Brancard, Special Assistant Attorney General
Keith W. Herrmann, Special Assistant Attorney General
Santa Fe, NM

for Respondent

Holland & Hart LLP
Michael H. Feldewert
Santa Fe, NM

for Intervenor

**OPINION**

**KENNEDY, Judge.**

{1} Petitioners appeal the New Mexico Oil Conservation Commission's (the Commission) order promulgating a 2013 version of 19.15.17 NMAC (6/28/2013) (the 2013 Rule), which is commonly referred to as the "Pit Rule." Petitioners make three arguments. First, they contend that the Commission had no jurisdiction to create the 2013 Rule because a previous version of the rule was the subject of a pending appeal in the courts at the time the 2013 Rule was adopted. Second, Petitioners argue that the Commission's decision to issue the 2013 Rule is arbitrary and capricious because it was contrary to the evidence received and because the Commission did not adequately set forth its reasons for changing the previous version of the Pit Rule. Third, Petitioners assert that the notice the Commission gave of its proposed rulemaking was inadequate. Petitioners request that we either vacate the Commission's order promulgating the 2013 Rule or reverse and remand the 2013 Rule to the Commission for further proceedings.

{2} We conclude that the pending appeals did not deprive the Commission of jurisdiction to promulgate the 2013 Rule. We further conclude that the Commission adequately explained its reasoning for the rule's adoption in the final rule and satisfied the statutory requirements for issuing notice. We affirm.

## I. BACKGROUND

{3} In 2008, the Commission approved a version of the Pit Rule (the 2008 Rule). In 2009, the Commission amended a portion of the 2008 Rule (the 2009 Amendment). Both the 2008 Rule and its 2009 Amendment were appealed to the First Judicial District Court by entities affiliated with the oil and gas industry, and the district court certified the appeals to this Court; we stayed our proceedings on these cases. In January 2012, the Commission, acting on petitions from the New Mexico Oil and Gas Association and Independent Petroleum Association of New Mexico, announced its intention to hold hearings on the petitions. Parties who opposed the proposed rule-making secured a writ of prohibition from the First Judicial District Court in February 2012, ordering the Commission to cease proceedings to amend the Pit Rule. That writ was quashed the following month. The Commission issued its notice that it would have a public hearing on the applications, and took evidence, heard argument, deliberated, adopted the rule, and filed an order promulgating the 2013 Rule. Earthworks' Oil and Gas Accountability Project submitted a request for rehearing in an effort to have the Commission reconsider the 2013 Rule. The Commission did not act upon that request within ten days; it was deemed denied pursuant to the New Mexico Oil and Gas Act (Oil and Gas Act), NMSA 1978, Sections 70-2-1 to -38 (1935, as amended through 2015). *See* § 70-2-25(A).

Conceding that the Oil and Gas Act, Section 70-2-25 and NMSA 1978, Section 39-3-1.1 (1999), do not provide for an appeal of Commission rulemaking, Petitioners sought a writ of certiorari under Rule 1-075 NMRA in the district court, which the district court granted. The district court subsequently certified the case to this Court. *See* Rule 1-074(S) NMRA.

## II.   DISCUSSION

### A.   Commission's Jurisdiction to Amend 2013 Pit Rule

{4}      Petitioners assert that the Commission had no authority to amend the Pit Rule because there had not yet been a final order issued in the appeals of the 2008 Rule or the 2009 Amendment and that pending judicial appeals must stay ongoing rulemaking on the particular issue concerned. However, Petitioners direct us to no authority compelling any new rulemaking on a particular subject to be held in abeyance while the appeal of a previous rule is pending. "We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority." *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. In support of their argument, Petitioners urge us to instead apply the rule that an appeal divests a lower adjudicatory tribunal of jurisdiction where it is acting in an adjudicatory capacity. Petitioners also have not provided any authority to relate a stay on appeal of agency adjudications to agency rulemaking activity. For

reasons that follow, we are unpersuaded by Petitioners' argument.

**1.      Distinctions Between Rulemaking and Adjudication**

{5}      Throughout their argument that the Commission had no jurisdiction to issue the 2013 Rule, Petitioners repeatedly conflate an administrative agency's adjudicatory authority with an agency's rulemaking authority. These two types of administrative authority are quite distinct in their application and function. While rulemaking creates generally applied standards to which an agency and individuals are held, adjudication is the resolution of particular disputes involving specific parties and specific problems, by applying such rules. *See Uhden v. N.M. Oil Conservation Comm'n*, 1991-NMSC-089, ¶ 7, 112 N.M. 528, 817 P.2d 721 (holding that acting on petition to create an exception to the Oil Conservation Rule with statewide application that will apply to limited situation and specific parties is "adjudicative rather than rulemaking"); *see Rauscher, Pierce, Fefsnes v. Taxation and Revenue Dep't*, 2002-NMSC-013, ¶ 42, 132 N.M. 226, 46 P.3d 687 (quoting *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994));[1] *Rayellen Res., Inc. v. N.M. Cultural*

---

[1]*Rauscher* provides, "Two principal characteristics distinguish rulemaking from adjudication. First, adjudications resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals. Second, because adjudications involve concrete disputes, they have an immediate effect on specific individuals (those involved in the dispute). Rulemaking, in contrast, is prospective, and has a definitive effect on individuals only after the rule subsequently is applied."

4

*Props. Review Comm'n*, 2014-NMSC-006, ¶ 27, 319 P.3d 639 (citing *In re Application of Timberon Water Co.*, 1992-NMSC-047, ¶ 23, 114 N.M. 154, 836 P.2d 73 (categorizing administrative action as regulatory when it furthers the public interest under the state's police powers and adjudicatory when it is based on adjudicating a private right rather than implementing public policy)).

{6}  It is well established that the Legislature can properly delegate rulemaking power to administrative agencies through an enabling statute. *New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 14, 149 N.M. 42, 243 P.3d 746 (per curiam). Our Legislature delegated concurrent rulemaking authority under the Oil and Gas Act to the Oil Conservation Division and the Commission. *See* Section 70-2-11(B); Section 70-2-12(B). Given this distinction, we hold that the Commission's actions in promulgating the 2013 Rule were regulatory rather than adjudicatory.

**2. Judicial Action May Not Preemptively Stop Administrative Rulemaking That is Otherwise Permissible**

{7}  We note that Petitioners' action to obtain a writ of prohibition against the Commission to prevent the proceedings that resulted in the 2013 Rule currently on appeal was ultimately quashed, and Petitioners did not appeal the final order. Our Supreme Court's opinion in *Shoobridge*, 2010-NMSC-049, presents an instructive view on nearly identical facts. In *Shoobridge*, parties opposing a rulemaking obtained a preliminary injunction prohibiting the Environmental Improvement Board from

conducting the administrative proceedings necessary to adopt a regulation. *Id.* ¶¶ 2-3. The Environmental Improvement Board petitioned our Supreme Court for a writ of superintending control or prohibition to vacate the injunction. *Id.* ¶ 4. The Supreme Court granted the writ, ordering the district court to dissolve the injunction and remanding the case to the agency to conduct its rulemaking proceedings. *Id.* In doing so, our Supreme Court rejected the idea that a court could enjoin the rulemaking process, reasoning that the separation of powers doctrine did not permit such a result:

> When the Legislature lawfully delegates authority to a state agency to promulgate rules and regulations, may a court intervene to halt proceedings before the agency adopts such rules or regulations? This question is one of substantial public interest because court intervention in administrative proceedings before the adoption of rules or regulations may thwart the public's right to participate in such proceedings. We hold that a court may not intervene in administrative rule-making proceedings before the adoption of a rule or regulation[.] . . . [T]he separation of powers doctrine forbids a court from prematurely interfering with the administrative processes created by the Legislature.

*Id.* ¶ 1.

{8} Petitioners' contention that the Commission lacked authority to promulgate the 2013 Rule because of pending appeals related to the 2008 Rule and 2009 Amendment is similar to the petitioner's argument in *Shoobridge*. To forestall rulemaking in this way would permit the courts to halt agency rulemaking proceedings prior to the issuance of a new rule. *See id.* ("[A] court may not intervene in administrative rule-making proceedings before the adoption of a rule or regulation."). Administrative

6

agencies routinely promulgate superseding rules on various topics. *See, e.g.*, *State ex rel. Stapleton v. Skandara*, 2015-NMCA-044, ¶ 3, 346 P.3d 1191 (discussing 6.69.8 NMAC (08/30/2012), which governs teacher evaluations in public schools and superseded 6.69.4 NMAC (09/30/2003, as amended through 06/15/2009)).[2]

{9}     Thus, to the extent that the 2013 Rule changed the 2008 Rule and the 2009 Amendment, the previous rule(s) are repealed by implication. Because the promulgation is final, Petitioners are free to challenge the rule on its merits. *See* Rule 1-075(A) ("This rule governs writs of certiorari to administrative officers and agencies pursuant to the New Mexico Constitution when there is no statutory right to an appeal or other statutory right of review."). However, the doctrine of separation of powers precludes the judicial branch from acting prior to promulgation. *Shoobridge*, 2010-NMSC-049, ¶ 14 ("Because of the necessity to respect the separate branches of government, courts should not intervene to halt administrative hearings before rules or regulations are adopted."). We therefore decline Petitioners' invitation to create a rule allowing an appeal to halt agency rulemaking action and conclude that the preceding appeals of the 2008 Rule and 2009 Amendment did not preclude the Commission from exercising its authority to promulgate the 2013 Rule, which will

---

[2]Similar principles exist in the statutory arena. *See State v. Valdez*, 1955-NMSC-011, ¶ 14, 59 N.M. 112, 279 P.2d 868 ("[W]here two statutes have the same object and relate to the same subject, if the later act is repugnant to the former, the former is repealed by implication to the extent of the repugnancy[.]").

now be addressed on its merits.

**B.    The Commission's Decision to Adopt the 2013 Pit Rule Was Not Arbitrary or Capricious**

{10}    In reviewing an administrative order on its merits, we conduct the same review as the district court sitting in its appellate capacity. *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806. Thus, we determine: "(1) whether the agency acted fraudulently, arbitrarily, or capriciously; (2) whether based upon the whole record on review, the decision of the agency is not supported by substantial evidence; (3) whether the action of the agency was outside the scope of authority of the agency; or (4) whether the action of the agency was otherwise not in accordance with law." Rule 1-075(R). Petitioners assert that the Commission's actions in this instance were arbitrary and capricious. An agency's action is arbitrary and capricious if it is "unreasonable or without a rational basis, when viewed in light of the whole record." *Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 17, 137 N.M. 161, 108 P.3d 1019 (internal quotation marks and citation omitted); *McDaniel v. N.M. Bd. of Med. Exam'rs*, 1974-NMSC-062, ¶ 11, 86 N.M. 447, 525 P.2d 374 (describing agency action as arbitrary and capricious when it is "willful and unreasonable . . . , without consideration and in disregard of facts or circumstances" (internal quotation marks and citation omitted)).

8

{11}    The party challenging a rule adopted by an administrative agency carries the burden of showing that the rule is arbitrary or capricious by demonstrating that " 'the rule's requirements are not reasonably related to the legislative purpose[.]' " *Old Abe Co. v. N.M. Mining Comm'n*, 1995-NMCA-134, ¶ 10, 121 N.M. 83, 908 P.2d 776 (internal quotation marks and citation omitted); *see also N.M. Att'y Gen. v. N.M. Pub. Regulation Comm'n*, 2013-NMSC-042, ¶ 9, 309 P.3d 89 (placing the burden on the parties challenging the agency order). When reviewing an agency's rulemaking decision we use a deferential standard:

> An agency's rule-making function involves the exercise of discretion, and a reviewing court will not substitute its judgment for that of the agency on that issue where there is no showing of an abuse of that discretion. Rules and regulations enacted by an agency are presumed valid and will be upheld if reasonably consistent with the statutes that they implement.

*Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 7, 288 P.3d 902 (internal quotation marks and citation omitted).

{12}    In adopting a new rule, an administrative agency is required to provide a statement of reasons for doing so. Although formal findings are not required, "the record must indicate the reasoning of the Commission and the basis on which it adopted the [rule]." *City of Roswell v. N.M. Water Quality Control Comm'n*, 1972-NMCA-160, ¶ 16, 84 N.M. 561, 505 P.2d 1237. The Commission need not state its reasons for adopting each provision in a rule or respond to all concerns raised in

testimony; such a requirement would be "unduly onerous . . . and unnecessary for the purposes of appellate review." *Regents of Univ. of Cal. v. N.M. Water Quality Control Comm'n*, 2004-NMCA-073, ¶ 13, 136 N.M. 45, 94 P.3d 788. We require only that "the public and the reviewing courts are informed as to the reasoning behind the [rule.]" *Pharm. Mfrs. Ass'n v. N.M. Bd. of Pharmacy*, 1974-NMCA-038, ¶ 17, 86 N.M. 571, 525 P.2d 931.

{13}     Petitioners contend the Commission's decision to issue the 2013 Rule was arbitrary and capricious for five reasons: (1) the 2013 Rule is radically different from the 2008 Rule, despite being based on largely the same evidence; (2) the Commission did not entirely explain its reason for departing from the 2008 Rule; (3) the Commission did not explain why the 2013 Rule is performance-based, instead of prescriptive; (4) the Commission gave no explanation of its lowered groundwater contamination criteria, and (5) the Commission gave no explanation of how it was able to accomplish more cost saving measures than the 2008 Rule while still protecting water supplies, public health, and the environment. Petitioner's assertions all follow the same line of reasoning. The Commission heard the same evidence in the hearings related to the 2013 Rule as it did in relation to the 2008 Rule, yet the 2013 Rule is so different from the 2008 Rule that it must be arbitrary and capricious. As explained in detail below, Petitioners' assertions of error are not stated in terms

10

of legal standards that indicate a need for reversal, but instead are groundless claims of error based on differences between the old and new versions of the Pit Rule. Petitioners supported the 2008 Rule and the 2009 Amendment; the first appeals of those rules were filed by the entities whose petition then resulted in the 2013 Rule, that Petitioners now appeal. Rules change. For a rule to be invalid, we apply the legal standards enunciated below.

**1.    Differences Between 2008 Rule and 2013 Rule Do Not Automatically Render the Latter Rule Arbitrary and Capricious**

{14}    Petitioners assert that the order issuing the 2013 Rule is arbitrary and capricious because it represents a "radical departure" from the 2008 Rule and 2009 Amendment despite being based on "identical" evidence. We decline to follow this interpretation. Petitioners also point out that the Commission took administrative notice of the 2008 proceedings when considering the 2009 Amendment and argue that we should follow suit because the 2013 Rule and 2008 Rule are so interrelated as to require us to take judicial notice of the 2008 Rule proceedings and the 2009 Amendment proceedings. However, during the proceedings below, with which we are presently concerned, the Commission *denied* Petitioners' request that it take administrative notice of the 2008 Rule and 2009 Amendment proceedings.

{15}    Petitioners do not argue that the Commission erred when it refused to consider the records from the 2008 and 2009 rulemaking hearings. Instead, Petitioners argue

11

that it is proper for this Court to take judicial notice of those records. Petitioners direct us to nothing that suggests we should expand our review from the record below, or why it would be meet to do so. To act as if a new rule that differs from an old one requires review of more than the record generated by the new rulemaking would be contrary to the well-established rules that "district courts engaged in administrative appeals are limited to the record created at the agency level[,]" *Montano v. N.M. Real Estate Appraiser's Bd.*, 2009-NMCA-009, ¶ 17, 145 N.M. 494, 200 P.3d 544, and "absent a specific statutory provision to the contrary, an appeal from an administrative hearing will be based solely on the administrative record." *Rowley v. Murray*, 1987-NMCA-139, ¶ 16, 106 N.M. 676, 748 P.2d 973; *see also Swisher v. Darden*, 1955-NMSC-071, ¶ 9, 59 N.M. 511, 287 P.2d 73 (stating that in determining whether an agency's decision is arbitrary, unlawful, unreasonable, or capricious, "the court in its review, is limited to the record made before the administrative tribunal"), *superceded by statute on other grounds as stated in Aguilera v. Bd. of Educ.*, 2006-NMSC-015, 139 N.M. 330, 132 P.3d 587. The Oil and Gas Act limits appeals from rulemaking decisions to the record made by the Commission. Section 70-2-12.2. It is not the function of a court acting in an appellate capacity to admit new evidence or substitute its judgment for that of an administrative agency. *See Groendyke Transp., Inc. v. N.M. State Corp. Comm'n*, 1984-NMSC-067,

¶¶ 17-20, 101 N.M. 470, 684 P.2d 1135 (concluding that the district court acting in appellate capacity was limited to reviewing evidence presented to an administrative agency, and acknowledging that administrative appeals are generally limited to evidence presented to an agency during an administrative hearing). Additionally, we will not be put in the the position of reviewing the appeals of the 2008 Rule and 2009 Amendment; those appeals are not before us here.

{16} In light of Petitioners' failure to provide authority to support their suggestion that we take judicial notice of the record in previous administrative rulemaking hearings, we decline to do so. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2 (acknowledging that where a party cites no authority to support an argument, we may assume no such authority exists). Our review is therefore limited to whether the Commission's order adopting the 2013 Rule was arbitrary or capricious in light of only the evidence presented to it during the 2013 rulemaking hearing.

**2.      The Reasoning Behind the 2013 Rule Is Adequate**

{17} After holding several hearings, the Commission adopted the 2013 Rule that is now on appeal. The Commission enumerated its reasons for adopting the 2013 Rule in a section of its order entitled "ultimate facts and conclusions of law." The Commission gave detailed explanations for the standards and requirements that it created in the 2013 Rule, and we afford agency rules a presumption of validity.

13

*Wilcox*, 2012-NMCA-106, ¶ 7. Generally, the Commission explained that since its issuance, the 2008 Rule has negatively impacted the growth of the oil and gas industry in New Mexico, has been difficult to understand, has created unnecessary paperwork, and has created a cumbersome process that does not promote predictability in the system. In addition, the Commission listed encouraging reuse and recycling of oilfield fluids and reducing surface impacts as additional bases for adopting the 2013 Rule.

{18} The Commission is not required to respond to all concerns raised during rulemaking hearings. For the purposes of appellate review, the reasons listed above, although general, are adequate to support its decision to issue the 2013 Rule, particularly in light of the detailed findings that the Commission provides for each general reason. For example, the Commission's order is divided into eight substantive categories: pit waste constituents, vadose zone modeling, soil transport, construction and design, operation and administration, closure and revegetation, siting, and multi-well fluid management pits. Each section contains detailed summaries of the evidence presented on the subject, including descriptions of the tests, studies, and models presented, as well as the results of those tests, studies, and models. The Commission then compiled that information in its conclusions section to reach results as to acceptable constituent levels, necessary soil depths, revegetation requirements, siting

considerations, and tank integrity. In all, the Commission's order spans fifty pages and is replete with the bases for, and reasoning behind, the 2013 Rule. We therefore conclude that the Commission sufficiently stated its reasons for adopting the 2013 Rule.

{19} Petitioners maintain that "[t]he Commission also failed to grapple with the facts and circumstances that were the fundamental bases of the 2008 Rule, but which it rejected without explanation in 2013." Petitioners point to nothing in the statute or regulations to support their assertion that the Commission is required to address the facts giving rise to a previous rule when promulgating a new rule. Our review of the record reveals that the Commission stated sufficient reasons for the creation of the 2013 Rule. Petitioners have not shown any deficiency in the evidence proffered during the 2013 rulemaking to suggest that the Commission's conclusions were arbitrary and capricious. *See Santa Fe Expl. Co. v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶¶ 10-11, 114 N.M. 103, 835 P.2d 819 (assertions must be accompanied by citations to the record); Rule 12-213(A)(4) NMRA (requiring that a brief in chief contain an argument that contains citations to the "record proper, transcript of proceedings or exhibits relied on").

**3.     Performance-Based Rule vs. Prescriptive Rule**

{20} Petitioners' brief asserts that the Commission failed to explain its reason for

adopting a more performance-based rule, rather than the prescriptive rule that they allege the 2008 Rule enacted. More specifically, Petitioners complain that the Commission provided no explanation as to why a performance-based rule is required as opposed to a prescriptive one.

{21} Petitioners' insistence on a particular type of rule misstates the Commission's obligation. The Commission is required only to comply with its statutory duties and provide an indication of the reasoning and basis that it used when adopting the rule. Outside of those requirements, the Commission has no obligation to promulgate prescriptive versus performance-based rules or give a detailed explanation of its reasons for issuing a certain type of rule. Nowhere in our review of the Oil and Gas Act, and its accompanying regulations, do we find any requirement that the rules promulgated by the Commission be performance-based or prescriptive; they need only satisfy the purposes set forth in Section 70-2-12(B).

{22} Rather than provide authority that binds the Commission to one type of rule over any other, Petitioners base their challenge on a comparison between the 2008 Rule and the 2013 Rule, given their belief that the 2013 Rule is inferior. Because Petitioners do not discharge their burden to demonstrate that the 2013 Rule is not reasonably related to the Commission's legislative purpose, as is required to demonstrate arbitrary and capricious action, we defer to the Commission's exercise

of discretion and presume the 2013 Rule is valid. *Old Abe Co.*, 1995-NMCA-134, ¶ 10 (stating requirements for proving action is arbitrary and capricious); *Wilcox*, 2012-NMCA-106, ¶ 7 (presuming agency rule is valid unless not in accord with statutorily prescribed purpose). As discussed below, the Commission has explained the reasoning and bases it used, and how it has accomplished its statutorily proscribed duties, while Petitioners have made no showing that the 2013 Rule is not reasonably related to the Commission's legislative purpose beyond their belief in its being a less palatable rule to their needs than the one previously adopted.

**4.      Lowered Groundwater Contamination Standards**

{23}      Petitioners contend that the Commission failed to justify its departure from the standards in the 2008 Rule that protected groundwater. As discussed above, the Commission is not required to "justify its departure" from the 2008 Rule; it is only required to explain its reasoning for adopting the 2013 Rule and how the 2013 Rule accomplishes the Commission's statutory duties. *City of Roswell*, 1972-NMCA-160, ¶ 16.

{24}      With regard to groundwater contamination, the Commission's order identified evidence detailing the depth and concentration of contamination levels, and how things like soil density, weather, temperature, and moisture affect the speed at which contaminants traveled certain distances. For instance, the Commission acknowledged

that, after hundreds of years, chloride, which is used as a non-toxic measurement of contaminant movement, would reach depths at which groundwater generally exists. The Commission then used that information to reach conclusions regarding infiltration of fluids, desirable pit slope angles, and mobility of various compounds. The Commission also considered evidence where samples taken from over thirty pits around the state were analyzed according to EPA methodology, and the resultant contaminant levels were compared to "published regulatory criteria." The Commission used that information to compile a list of contaminants that warranted monitoring as well as their acceptable levels. The Commission then concluded that the levels it specified in the 2013 Rule "provide reasonable protection of fresh water, public health and the environment[,]" and it explained how it reached that conclusion. It detailed the level of contamination permissible when groundwater is found at varying depths, and reasoned that the evidence presented supported its conclusions. In addition, the Commission's order provides citations to portions of the record that it relied on in making its findings and conclusions.

{25} For reasons detailed previously, we do not take up Petitioners' argument that the Commission's adoption of the 2013 Rule is arbitrary and capricious because Petitioners do not explain why the 2013 Rule is different from the 2008 Rule with respect to groundwater standards. That is not the standard that we apply; we instead

look to whether the Commission's actions are consistent with the statute it is charged with implementing. *Wilcox*, 2012-NMCA-106, ¶ 7. The Commission is assigned the task of regulating "the disposition of water produced or used in connection with the drilling for or producing of oil or gas . . . in a manner that will afford reasonable protection against contamination of fresh water supplies[.]" Section 70-2-12(B)(15). Not only is the Commission's order consistent with that mandate with regard to groundwater, but the Commission also provided an adequate explanation based on the evidence as to how it arrived at its decision to adopt the provisions that it did.

**5. Economic Considerations**

{26} Petitioners assert that the Commission acted improperly in promulgating the 2013 Rule because it did so in order to further economic development, and the furtherance of economic development is not part of the Commission's duties under the Oil and Gas Act. The Commission asserts that economic considerations exist as the very core of its statutory obligations. Petitioners' argument is misconceived.

**a. Economic Considerations Were Not the Commission's Primary Purpose in Promulgating the 2013 Rule**

{27} The Oil and Gas Act intends that all oil fields be allowed to produce and market a share of the oil produced and marketed in the state, "insofar as [that] can be effected economically and without waste." Section 70-2-19(B). The Oil and Gas Act also vests the Oil Conservation Division with the duty to make whatever rules,

19

regulations, and orders that are necessary to carry out the provisions of the Oil and Gas Act, and in so doing, "the division shall give due consideration to the economic factors involved." Section 70-2-19(C). In addition, the Oil Conservation Division must allocate oil production efficiently and economically and must "consider the economic loss caused by the drilling of unnecessary wells[.]" Section 70-2-17(B). Finally, the Legislature empowered the Oil Conservation Division "to make and enforce rules, regulations and orders, and to do *whatever may be reasonably necessary* to carry out the purpose of [the Oil and Gas A]ct, *whether or not indicated or specified in any section*[.]" Section 70-2-11(A) (emphasis added). Further, the Commission is required to minimize the economic impact of its rules on small businesses, and in doing so, consider the complexity of the rule, the complaints and comments received from the public concerning the rule, and the degree to which technology and economic conditions have changed in the area affected by the rules. NMSA 1978, § 14-4A-6(A), (C)(1)-(5) (2005); NMSA 1978, § 14-4A-3(A) (2005) (applying Small Business Regulatory Relief Act to "every department, agency, board, commission, committee or institution of the executive branch of state government").

{28}    We do not regard the Commission's mandate so broadly as to accept its contention that economic considerations stand as the basis for its other duties under the Oil and Gas Act. *See* § 70-2-12(B). We agree with Petitioners that economic

considerations cannot stand as the sole purpose for creating or amending a rule. *Cf. Pub. Serv. Co. of N.M. v. N.M. Envtl. Improvement Bd.*, 1976-NMCA-039, ¶ 10, 89 N.M. 223, 549 P.2d 638 (stating that agency authority should be construed to permit the fullest accomplishment of legislative intent, but acknowledging that where it is not included in the scope of authority delegated to an agency, industrial development should occur as a consequence, not by design). However, the language of the Oil and Gas Act allows for the Commission to include economic considerations in its reasoning when promulgating rules. While economic considerations undoubtedly played some role in the Commission's decision to issue the 2013 Rule, we see no indication that economic considerations were the *primary* purpose behind the rule.

{29}    In its order, the Commission stated many reasons that the 2013 Rule was necessary, including the Commission's desire to encourage reuse and recycling of oilfield fluids and reduce surface impacts, which was inspired by changes in oilfield practices. These considerations were enacted to protect the environment and public health in accordance with the Oil and Gas Act. *See* § 70-2-12(B)(21), (22). Additionally, the Commission's order points to its desire to clarify and alleviate the cumbersome process and confusion that resulted from years of the 2008 Rule's application. To illustrate this, the Commission points to interpretations of the 2008 Rule that resulted in unnecessarily restrictive siting requirements and inappropriate

application of the rule to fresh water pits and surface features. Simplification of compliance with the Pit Rule is a measure that is reasonably necessary to accomplish the prevention of waste and protection of correlative rights. *See* § 70-2-11(A); *see also* 19.15.2.7(C)(15) NMAC (defining "correlative rights"). These reasons are in addition to the Commission's finding that the 2013 Rule favorably impacts small business by making compliance less costly.

{30} We conclude that the Commission acted within its statutory authority when including economic considerations in its stated reasons for promulgating the 2013 Rule. Economic development was not the Commission's primary purpose for promulgating the rule, but rather, was properly one of many reasons for it. We further conclude that the Commission's order properly takes into consideration public comments concerning the rule, the rule's complexity, and technological and economic changes. *See* § 14-4A-6.

**b.    The Commission's Reasoning is Adequate**

{31} Petitioners assert that the Commission gave no explanation of how it was able to accomplish more cost saving measures than the 2008 Rule, yet still protect water supplies, public health, and the environment. This argument is based on the order adopting the 2008 Rule, which stated that the Commission made all changes it could to lessen potential effects on small businesses while still protecting fresh water,

human health, and the environment. Petitioners argue that because the Commission took all possible measures in 2008, it is implicit that there were no cost-saving measures remaining to be made in the 2013 Rule. Thus, they argue, the decision to include any changes related to cost-saving measures in the 2013 Rule must be arbitrary and capricious. Petitioners state no factual basis for this, and the record does not support their argument. Again, our standard of review does not contemplate a comparison of the old and new rules, but rather requires that we consider whether the Commission has provided an adequate explanation of its reasoning, *see City of Roswell*, 1972-NMCA-160, ¶ 16, and whether its decision is unreasonable in light of the whole record. *See Archuleta*, 2005-NMSC-006, ¶ 17.

{32}     Relying on evidence presented during the 2013 proceeding, the Commission made findings regarding misconceptions regarding tank requirements that underlie the 2008 Rule and the 2009 Amendment and the unnecessary costs incurred through compliance with that rule. In addition, the Commission made findings as to the general decline of the oil business in recent years, including reduced number of wells drilled, higher cost of drilling, businesses leaving the state due to increased cost, and operator reluctance in attempting to obtain exceptions from the 2009 Amendment owing to its language and complexity. Based on those findings, the Commission reached the conclusion that the 2013 Rule was necessary to make compliance with

the Pit Rule less cumbersome and more understandable for the regulators and regulated community. The Commission's order promulgating the 2013 Rule lists ten reasons for altering the Pit Rule, including making compliance with the rule less costly, more efficient, more consistent, and more understandable. Findings as to correlative rights and economic waste are sufficient to satisfy our requirement that administrative agencies state their reasoning for issuing an order. *Rutter & Wilbanks Corp. v. Oil Conservation Comm'n*, 1975-NMSC-006, ¶ 18, 87 N.M. 286, 532 P.2d 582 (stating that findings as to correlative rights and economic waste are sufficient to satisfy the requirement that the Commission make basic conclusions of fact or findings); *see also* 19.15.2.7(C)(15) NMAC (defining "correlative rights" as the opportunity afforded to the owner of each property in a pool to produce without waste the owner's equitable share of the oil in the pool, so far as can be practicably obtained without waste).

{33}     We conclude that the explanation given was adequate to explain the Commission's reasoning in promulgating the 2013 Rule. In addition, we conclude that Petitioners have not demonstrated that the Commission abused its discretion in concluding that the 2013 Rule's provisions are adequate to protect public health and the environment. We therefore defer to the Commission's discretion and uphold the 2013 Rule as reasonably consistent with the Oil and Gas Act. *See Wilcox*, 2012-

24

NMCA-106, ¶ 7.

**C.     Notice**

{34}     The Oil and Gas Act requires the Oil Conservation Division to create rules governing the procedure to be followed in hearings and other proceedings before it. Section 70-2-7. The Commission promulgated separate procedural rules for rulemaking hearings and adjudicatory hearings. *Compare* 19.15.3.9 NMAC *with* 19.15.4.9 NMAC. Before any rule, regulation, or order is adopted, the Commission must first hold a hearing on the matter. Section 70-2-23. The Commission must, no less than ten days prior to the hearing, give "reasonable notice" that a hearing is taking place.[3] *Id.* The right to receive notice and a hearing before the adoption of a rule is a statutory right. *Livingston v. Ewing*, 1982-NMSC-110, ¶ 14, 98 N.M. 685, 652 P.2d 235. The " 'reasonable notice' mandate should circumscribe whatever . . . rules are promulgated for the purpose of notifying interested persons." *Johnson v. N.M. Oil Conservation Comm'n*, 1999-NMSC-021, ¶ 23, 127 N.M. 120, 978 P.2d 327.

{35}     Notice of rulemaking hearings must be published on behalf of the State of New Mexico, be signed by the Commission's chairman, and bear the Commission's seal. 19.15.3.9(A) NMAC. In addition, it must state the hearing's date, time, and place, as

---

[3] The ten-day rule does not apply in cases of emergency. Section 70-2-23.

25

well as the date by which those commenting must submit their written comments. 19.15.3.9(A) NMAC. The notice must be published in four different ways: "(1) one time in a newspaper of general circulation in the state, no less than 20 days prior to the scheduled hearing date; (2) on the applicable docket for the commission hearing . . ., which the commission clerk shall send by regular or electronic mail not less than 20 days prior to the hearing to all who have requested such notice; (3) one time in the New Mexico Register, with the publication date not less than 10 business days prior to the scheduled hearing date; and (4) by posting on the division's website not less than 20 days prior to the scheduled hearing date." 19.15.3.9(A)(1)-(4) NMAC.

{36} The Commission's notice was issued on behalf of the State of New Mexico, was given under the Commission's seal, and was signed by the chairman of the Commission. It also stated the date, time, and place of the hearing, and it gave the date by which written comments were required to be submitted. Notice was published in the Albuquerque Journal, on the Commission docket, which was mailed electronically to those who requested it, in the New Mexico Register, and on the Oil Conservation Division's website. All notices were timely. Given these facts, we conclude that the Commission satisfied all notice requirements prescribed by statute and regulation.

{37} Petitioners' challenge to the adequacy of the Commission's notice focuses on one of the fifteen proposed amendments listed in the notice, namely, the one pertaining to "multi-well fluid management pits." Petitioners assert that the notice was inadequate to reasonably inform the public of the substance of the proposed rules. Petitioners point out that the notice did not describe the purpose of those multi-well pits, their anticipated size, their anticipated operating duration, or their anticipated impacts on air, water, and public health. Petitioners contend that, because the notice was inadequate, they were deprived of an adequate opportunity to prepare expert witnesses or prepare adequate cross examinations of witnesses.

{38} Petitioners cite to 19.15.3.8 NMAC and the New Mexico Administrative Procedures Act (NMAPA) to support their assertion that the Commission's notice was inadequate. Neither authority cited supports Petitioners' argument. First, 19.15.3.8(A)(1) NMAC governs orders initiating rulemaking, and requires that *applications* to initiate rulemaking include "a *brief* summary of the proposed rule change's intended effect[.]" (Emphasis added.) Nowhere in the rule does it address notice requirements, nor does it require a summary of the complexity that Petitioners desire, and Petitioners provide no reason for us to apply such a requirement to the notice procedure. Second, Petitioners suggest that we use the NMAPA as a general guideline for resolving administrative law questions. Petitioners acknowledge that the

NMAPA does not apply to all administrative agencies. *See E. Indem. Co. of Maryland v. Heller*, 1984-NMCA-125, ¶ 4, 102 N.M. 144, 692 P.2d 530 (stating that NMAPA only applies to an agency that is specifically placed, by law, rule, or regulation, under the Administrative Procedures Act). They do not cite to any authority applying the NMAPA to the Commission. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2 (stating that we will not review issues raised in appellate briefs which are unsupported by cited authority). Nothing in the Oil and Gas Act applies the NMAPA to the Commission's actions. Thus, we conclude that the Commission complied with the language of the Oil and Gas Act and its associated rules when it issued notice of the rulemaking hearings.

{39}     Despite the Commission's compliance with its statutory obligation to issue notice, Petitioners contend that the language in the notice referring to "multi-well" pits was misleading or unintelligible. Notice may be inadequate to fulfill its statutory purpose of notifying interested persons if it is insufficient, ambiguous, misleading, or unintelligible to the average citizen. *Nesbit v. City of Albuquerque*, 1977-NMSC-107, ¶ 9, 91 N.M. 455, 575 P.2d 1340; *see also Johnson*, 1999-NMSC-021, ¶ 23 (acknowledging that purpose of "reasonable notice" in the Oil and Gas Act is to notify interested persons). Although it is conceivable that the average citizen might not know what a requirement pertaining to multi-well pits might include, the notice

provides more information than simply a cursory reference to a cryptic term. The notice indicates how copies of the proposed amendments to the Pit Rule can be obtained: through the Oil Conservation Division's Administrator—whose phone number is included—or through the Oil Conservation Division's website—which is also included. The proposed amendments include a lengthy definition of what a "multi-well fluid management pit" is, and detail what permit applications for multi-well pits require, where multi-well pits may not be located, and what construction requirements were for multi-well fluid management pits. If Petitioners were, indeed, misled by, or unaware of, the Commission's notice, they could have received significantly more information about multi-well pits and what changes were being considered by reaching out to the Division. We therefore reject Petitioners' argument that the Commission's notice was inadequate. It not only satisfied the statutory and regulatory requirements, but also provided additional information by making the proposed amendments available upon request.

## III.   CONCLUSION

{40}     Petitioners' assertions of error must fail. They point to no legal basis for their assertion that the Commission lacked jurisdiction to issue its order and create the 2013 Rule. In promulgating the 2013 Rule, the Commission satisfied its statutory duties and gave adequate reasons for its actions. As such, we conclude that there was

29

no error, and affirm.

{41}    **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**