1998-NMCA-118

964 P.2d 169

**Gary MILES and Patience O'Dowd, Plaintiffs–Appellees,**

v.

**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SANDOVAL, New Mexico, Defendant–Appellant.**

**No. 18186.**

Court of Appeals of New Mexico.

July 7, 1998.

Certiorari Denied Aug. 13, 1998.

Hessel E. Yntema, III, Oman, Gentry & Yntema, P.A., Albuquerque, for Plaintiffs–Appellees.

Theodore C. Baca, Sandoval County Attorney, Bernalillo, for Defendant–Appellant.

### OPINION

BOSSON, Judge.

{1}   We address the level of notice required by both state statute and principles of constitutional due process when a county commission adopts a comprehensive zoning ordinance.  Because we determine that the adoption of a comprehensive zoning ordinance serves a legislative, as opposed to an adjudicative function, we hold that the generalized notice afforded in this instance did not violate any due process rights of the protesting property owner.  We also conclude that the notice satisfied minimal statutory requirements that apply to zoning enactments of this nature.  We reverse the district court's ruling in favor of the property owner and against the County.

### BACKGROUND

{2}   With the exception of certain municipal areas, Sandoval County had no comprehensive zoning until January 20, 1988, when the first comprehensive zoning ordinance went into effect, limited to the community of Algodones.  In the same month, Plaintiffs Miles and O'Dowd [hereinafter Miles], purchased property in an unincorporated and unzoned area of the county near Placitas.  On February 7, 1990, the Sandoval County Commission zoned the remainder of Sandoval County, including Miles' property, by amending the existing comprehensive zoning ordinance to designate the rest of the county, outside the municipal areas, as a Development Review (DR) district.  That designation permitted only residential and agricultural uses; property owners wishing to make other use of their property had to obtain a conditional use permit from the county.

{3}   Before  enacting . this  expansive amendment to the comprehensive zoning ordinance, the County published the following notice in the *Albuquerque Journal:*

**610**

LEGAL NOTICE

The Sandoval County Commission will be considering for adoption the following: DEVELOPMENT REVIEW DISTRICT AMENDMENT TO ZONING ORDINANCE AMENDING THE COMPREHENSIVE ZONING ORDINANCE OF SANDOVAL COUNTY IN ORDER TO DESIGNATE A NEW AND BASIC ZONE DISTRICT TO BE KNOWN AS THE DEVELOPMENT REVIEW DISTRICT

| Part I | Replace Section 3 |
| Part II | Jurisdiction |
| Part III | Replace Section 9 |
| Part IIIA | Intent |
| Part IIIB | District Standards |

The public hearing on the contents of the Amendment will be held at a regularly scheduled meeting of the Sandoval County Commission to be held on January 3, 1990. Following the hearing the Commission may choose to table to deny or to adopt the proposed Amendment. Should the Commission table action on the matter, further publication may occur at their request but is not necessitated by New Mexico State Law.

The meeting of January 3, 1990 will be held in the Commission Room first floor, Sandoval County Courthouse, 1123 Camino Del Pueblo, Bernalillo, New Mexico, and will begin at 2:00 pm.

Copies of the proposed Amendment are available from the office of the County Manager, Sandoval County, 867–2341.

Joanne McGlothen

County Manager

Sandoval County

Journal, November 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 1989.

{4} Over four years later in 1994, neighbors complained to the County that Miles was operating an auto salvage yard on his property, a use which was inconsistent with DR zoning. On April 5, 1994, the county planner sent a letter to Miles, notifying him of these complaints and informing him that only residential and agricultural uses were permitted. Discussions took place between the county planner and Miles, and Miles was advised that he would be required to apply for a zone change and obtain a conditional use permit for his salvage operation. In April 1995, Miles requested that the County zoning officer certify that his place of business was properly zoned for a motor vehicle dealership and an auto dismantling operation. His request was denied.

{5} Miles then sued the County, claiming for the first time that the notice that had been published five years earlier in the *Albuquerque Journal,* announcing the proposed comprehensive zoning ordinance, was constitutionally and statutorily defective. The district court granted summary judgment for Miles, finding that the published notice was insufficient to put a reasonable person on notice of the fundamental and substantial changes in zoning proposed for the Miles property. The court then concluded that the County was liable under 42 U.S.C. § 1983 for violation of Miles' right to procedural due process of law, and Miles was awarded nominal damages and attorney's fees. The County raises two issues on appeal: (1) whether the published notice substantially complied with the applicable statutory notice requirements, and (2) regardless of the particular state statute, whether the County had violated any protected due process rights under the constitution that would give rise to liability under 42 U.S.C. § 1983. We address the second question first because it resolves the lingering constitutional issues in favor of the County.

## DISCUSSION

### Attorney's Fees Under the Civil Rights Act

■ {6} The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, permits a trial court to award attorney's fees to a party who prevails in a civil rights action. *See Bogan v. Sandoval County Planning & Zoning Comm'n,* 119 N.M. 334, 345, 890 P.2d 395, 406 (Ct.App.1994). When a person, acting under color of state law, causes an individual to be deprived of a federally protected constitutional right, that individual may bring a claim for damages under 42 U.S.C. § 1983 and for attorney's fees under 42 U.S.C. § 1988. *See Bogan,* 119

N.M. at 345, 890 P.2d at 406. "A county government acting 'under color of some official policy' can be subject to liability under Section 1983." *Id.* (quoting *Monell v. Department of Social Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In order to be awarded attorney's fees under 42 U.S.C. § 1988, however, a party must prevail on some federal constitutional claim, and not just a claim grounded on state statute. *See Kelly v. City of Leesville*, 897 F.2d 172, 176–77 (5th Cir.1990); *Garcia v. Las Vegas Med. Ctr.*, 112 N.M. 441, 443, 816 P.2d 510, 512 (Ct.App.1991). Therefore, we turn to Miles' constitutional claim that the form of notice afforded by the County when adopting its zoning ordinance deprived him of procedural due process of law under the Fourteenth Amendment.

### Legislative Enactment of Zoning Ordinances Does Not Create a Constitutional Right to Any Particular Notice Under Procedural Due Process

{7} Miles claims he was deprived of Fourteenth Amendment procedural due process when the County failed to provide adequate public notice of the proposed changes to the comprehensive zoning ordinance that was adopted in 1990. We do not agree that Miles had any claim under the federal constitution to any particular kind of notice with respect to County acting in a legislative or rule-making capacity.

{8} As our Supreme Court has recently observed, "[p]rocedural due process requires the government to give notice and an opportunity to be heard before depriving *an individual* of liberty or property." *Madrid v. St. Joseph Hosp.*, 1996–NMSC–064, ¶ 25, 122 N.M. 524, 928 P.2d 250 (emphasis added). However, it is equally true that "[p]rocedural due process does not apply when government makes a policy decision that has an adverse impact on an entire classification of individuals ..., even if the decision has the same adverse effect on the interests of the members of the group as would an individualized deprivation." 2 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.2, at 3 (3d ed.1994) [hereinafter Davis & Pierce]. As these commentators

point out, "[t]he distinction between individualized [fact-based] deprivations, that are protected by procedural due process, and policy-based deprivations of the interests of a class, that are not protected by procedural due process ... underlies both the distinction between legislation and judicial trial and the distinction between rulemaking and adjudication." *Id.*

{9} This distinction between a legislative enactment and a fact-based adjudicative act, and the corresponding level of process required under the constitution, was clarified by Justice Holmes at the onset of this century in the landmark case of *Bi–Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915). Justice Holmes wrote:

> Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard.

*Id.* at 445, 36 S.Ct. 141. Thus, when government action is concentrated on a relatively small number of persons, based on individual grounds, then the dictates of constitutional due process require individualized notice and an opportunity to be heard. *See id.* at 446, 36 S.Ct. 141. However, when the matter concerns general statutes or other enactments "in which all are equally concerned," *id.* at 445, 36 S.Ct. 141, notice and an opportunity to be heard may not be constitutionally required. Moreover, the distinction and the "pragmatic considerations" identified by Justice Holmes almost a century ago "are as weighty today as they were in 1915." *Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 285, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984); *see* Davis & Pierce § 9.2, at 4–5. Ultimately, "the character of the action, rather than its label, determines whether those affected by it are entitled to constitutional due process." *Har-*

*ris v. County of Riverside,* 904 F.2d 497, 501–02 (9th Cir.1990).

{10} In *City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), the United States Supreme Court followed this principle generally in a dispute over whether zoning variances could be made subject to popular referendum without violating the due process rights of the applicant. The court in *Eastlake,* 426 U.S. at 676, 96 S.Ct. 2358, stated that the legislative act of passing a zoning ordinance is subject to the *substantive* due process requirements outlined in *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (stating that a property owner can challenge a zoning restriction that is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare). However, in the legislative context discussed in *Euclid,* once a zoning ordinance is found to be reasonable, "nothing more is required by the Constitution." *Eastlake,* 426 U.S. at 677, 96 S.Ct. 2358.

{11} In a factual context closer to our case, the United States Circuit Court of Appeals for the Seventh Circuit denied a procedural due process challenge under 42 U.S.C. § 1983 to a moratorium enacted by the local government on certain business development. Citing Justice Holmes in *Bi–Metallic,* the court analyzed the issue with familiar logic:

> The Board is an elected body that acted legislatively in enacting the moratorium. It did not deny Pro–Eco a permit or variance; rather, it enacted a generally applicable ordinance. Governing bodies may enact generally applicable laws, that is, they may legislate, without affording affected parties so much as notice and an opportunity to be heard.

*Pro–Eco v. Board of Comm'rs,* 57 F.3d 505, 513 (7th Cir.1995). The theory is that citizens affected equally by general legislative enactments may not need quite the same protection as when government focuses on an individual or a small discrete group. *See id.* Additionally, the New Mexico Supreme Court has declared: "There is no fundamental right to notice and hearing before the adoption of a rule; such a right is statutory only." *Livingston v. Ewing,* 98 N.M. 685, 688, 652 P.2d 235, 238 (1982). This Court has stated with regard to zoning that "[t]he decision to enact an ordinance is legislative in nature, made by an elective body under its police powers for the protection of the health, safety, and welfare of the public." *Downtown Neighborhoods Ass'n v. City of Albuquerque,* 109 N.M. 186, 189, 783 P.2d 962, 965 (Ct.App.1989); *cf. West Old Town Neighborhood Ass'n v. City of Albuquerque,* 1996–NMCA–107, ¶ 11, 122 N.M. 495, 927 P.2d 529 (application of a general rule to a specific property is quasi-judicial rather than legislative act). This appears consistent with the generally accepted rule for the adoption of comprehensive zoning ordinances. *See* Judith Welch Wegner, *Moving Toward the Bargaining Table: Contract Zoning, Development Agreements, and the Theoretical Foundations of Government Land Use Deals,* 65 N.C.L.Rev. 957, 1012 (1987) ("It is clear that the adoption of a comprehensive zoning ordinance serves a legislative function because it raises broad, general questions of public policy."); *Developments in the Law of Zoning,* 91 Harv.L.Rev. 1427, 1512 (1978) (noting that most courts also hold that the adoption of a comprehensive plan is a legislative act).

{12} We are satisfied that the adoption of this comprehensive zoning ordinance by Sandoval County was of a character that is commonly described as a legislative act—a policy decision affecting a large number of persons and a vast area of land, based upon general criteria and not the details of any particular landowner. Thus, we hold that neither Miles nor any other property owner had a legal right under the constitution, as opposed to statute, to any particular kind of notice and an opportunity to be heard. Instead, Miles had a right to whatever statutory notice the legislature may have decided was appropriate for this level of government activity.

{13} Because the County was acting in its legislative capacity, adopting a rule of general applicability, the New Mexico cases Miles cites to us regarding constitutional notice are unpersuasive. All involve rezoning or variances and the effect of government

action upon a relatively small number of affected individuals such as notice to immediate neighbors. For example, *Bogan* focused on whether a small number of neighboring landowners had been given adequate notice of a meeting of the county commission scheduled to review a request for a zoning variance to allow billboards to be erected close to their property. *See Bogan,* 119 N.M. at 338–40, 890 P.2d at 399–401. Even then, in the adjudicative setting of a zoning variance, this Court was unable to determine if any procedural rights to constitutional due process had been violated, although the neighbors concededly had certain notice rights under state statute that applied to such adjudicative process. *See id.* at 345–46, 890 P.2d at 406–07. In a similar case, *Nesbit v. City of Albuquerque,* 91 N.M. 455, 575 P.2d 1340 (1977), the Supreme Court held that neighboring property owners were entitled to statutory notice of a hearing on a zoning change that proposed a significant increase in the number of residential units that could be developed on a neighboring acreage and was therefore directed at specific property owners in a limited area. So too, *Hawthorne v. City of Santa Fe,* 88 N.M. 123, 537 P.2d 1385 (1975), dealt with a situation in which a property owner, who lived within one hundred feet of a proposed zoning change from residential to commercial, had not been given notice of a public hearing but appeared nonetheless, and the court held there was substantial compliance with the statute. No constitutional issue was framed in that case.

{14} Accordingly, because the County was clearly acting in a rule-making, legislative capacity, the question of notice devolves into whatever is required by statute, not the constitution. Because the County has not deprived Miles of any identifiable constitutional right, Miles has no claim to damages under 42 U.S.C. § 1983 or attorney's fees under 42 U.S.C. § 1988, regardless of how we rule on the legality of the County's notice under state statute.

**Statutory Notice**

{15} Two statutes are under consideration: NMSA 1978, Sections 3–21–6 and –14 (1981). Miles contends that both apply to the current case. Section 3–21–6(B) requires individual notice to affected property owners for *changes* in zoning affecting relatively small numbers of property owners. Specifically, it requires notice by certified mail to lot owners within the area and within one hundred feet of the area proposed to be changed, when "a change in zoning is proposed for an area of one block or less[.]" *Id.* It also requires notice to be sent by first class mail to lot owners within the area and within one hundred feet of the proposed change "[w]henever a change in zoning is proposed for an area of more than one block[.]" *Id.*

{16} Clearly, the notice provided by the County in this case did not satisfy Section 3–21–6, but just as clearly, that statute does not apply to this kind of zoning action. The County was not making zoning adjudications regarding relatively small numbers of people who might be directly affected by zoning changes in a specific neighborhood. When a comprehensive zoning ordinance is being *adopted,* rather than changed in its details, an action which is likely to affect a large number of property owners equally, it would appear that Section 3–21–14(B) applies. By its terms, Section 3–21–14(B) only requires "publication of the title and a general summary of a proposed ordinance in a newspaper of general circulation in the county at least once a week for two consecutive weeks prior to the date of the meeting of the board at which the ordinance is to be submitted for final passage." The County argues that Section 3–21–14 applies in this case because it involves the adoption of a new zoning ordinance for all of Sandoval County, outside Algodones, rather than changes to already existing zoning requirements designed to affect particular properties in specific ways.

{17} We agree with the County. We are persuaded that the appropriate notice for a new, comprehensive zoning ordinance that distributes its impact over an entire community is notice by publication, as set forth in Section 3–21–14, rather than the individualized notice set forth in Section 3–21–6.

{18} Miles then argues that the published notice was defective even under

Section 3–21–14 because it did not indicate which specific areas of Sandoval County were to be zoned. The title of the proposed ordinance was published, along with a summary of the ordinance in the form of subheadings. No New Mexico case informs us of the precise requirements for a "general summary" or instructs us on the specificity required in the title in cases involving the adoption of comprehensive zoning ordinances. In *Hopper v. Board of County Commissioners*, 84 N.M. 604, 607, 506 P.2d 348, 351 (Ct.App. 1973), this Court interpreted a predecessor statute that required publication of the ordinance in its entirety. In his dissent, Judge Sutin reasoned that the verbatim publication of an entire comprehensive zoning ordinance was burdensome and of questionable value. *See id.* at 608, 506 P.2d at 352 (Sutin, J., dissenting). He suggested that the statute be amended "to allow the board of county commissioners to publish a summary, not the full text, of the ordinance[.]" *Id.* Thus, he stated, "[t]he members of the public interested in the Comprehensive Zoning Ordinance would have sufficient time to procure and study it." *Id.* The notice statute was later amended and statutory notice under Section 3–21–14 now requires only publication of the title and a "general summary," presumably for the same purpose of alerting interested persons of the subject matter so that they, too, might "procure and study" the statute. Thus, we can infer from the statute that a "general summary" need only inform the public generally, without specific conditions or any particular detail, and that, within reasonable limits, it is incumbent upon the public to exercise diligence to apprehend what might be included in the body of the proposed ordinance and take appropriate action to educate itself. *See Bogan,* 119 N.M. at 341, 890 P.2d at 402 ("[W]here circumstances are such that a reasonably prudent person should make inquiries, that person is charged with knowledge of the facts reasonable inquiry would have revealed.").

{19} Other jurisdictions have had occasion to address the type of notice that should be given for comprehensive zoning ordinances. In *Golden Gate Corp. v. Town of Narragansett,* 116 R.I. 552, 359 A.2d 321, 323 (1976), the Supreme Court of Rhode Island observed that "notice to be given in connection with any proposed comprehensive revision of the zoning classifications for large areas of a community need not be as specific as the notice relating to a possible change in the zoning classification of one particular parcel of land." The court then provided a test requiring the notice reasonably to inform landowners of the zoning in a manner that would be comprehensible to the average citizen, a test similar to New Mexico's. In *Itasca County v. Rodenz,* 268 N.W.2d 423, 424 (Minn.1978), the Supreme Court of Minnesota held that a published notice of a proposed comprehensive zoning ordinance was adequate even though it did not state any intention to enact the ordinance. The court remarked that in the case of lengthy ordinances, such as comprehensive zoning ordinances, a title and a summary are sufficient. *Id.* The court noted that copies of the ordinance were available for inspection, but suggested that "the better practice would be to include more detail ... [but they were] satisfied that the public had adequate notice of the hearing and of the enactment of the zoning ordinance." *Id.*

{20} In the current case, the notice stated that the comprehensive zoning ordinance for Sandoval County would create a new developmental review district. Comprehensive zoning ordinances have been described as designed to zone "all, or substantially all, of a political subdivision[,]" regulating all uses. *Missouri v. Village of Oakwood,* 886 S.W.2d 74, 80–82 (Mo.Ct.App.1994). Thus, a notice proposing a comprehensive zoning ordinance for a county should, by its own terms, put an average person on notice that something is happening that may affect every property in the area. This, in turn, should put a reasonable person on notice to inquire further, particularly when the ordinance would create a new zone in a county largely unzoned, in which the population and resulting pressure for zoning has been increasing. It is not unreasonable for the legislature to impose upon the property owner in such circumstances the duty of inquiry, the duty in Judge Sutin's words "to procure and study" the proposal, so as

to discover whether such zoning applies. to one's own property. As with the Supreme Court of Minnesota in *Itasca County*, we acknowledge that the general summary could have been more informative and that the addition of the words "all of" before "Sandoval County" would have been the better way to draft the notice. Nevertheless, the information provided in the title of the proposed ordinance is sufficiently informative to provide substantial compliance with the statutory requirement of constructive notice by publication of the title and a general summary of proposed ordinance. *See Hawthorne*, 88 N.M. at 124, 537 P.2d at 1386 (holding that notice for zoning changes need only provide substantial compliance with statute).

## CONCLUSION

{21} For the foregoing reasons we hold that the notice provided of the proposed comprehensive zoning ordinance for Sandoval County substantially complied with the requirements of Section 3–21–14. We also hold that because the enactment of a comprehensive zoning ordinance is a legislative act, Miles' constitutional procedural due process rights were not implicated, and he thus has no claim to damages or attorney's fees under the federal Civil Rights Act. We reverse the district court's order and remand for proceedings consistent with this opinion.

{22} **IT IS SO ORDERED.**

ALARID and BUSTAMANTE, JJ., concur.