This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37860**

**LARRY MARKER,**

Applicant-Appellant,

v.

**NEW MEXICO OIL CONSERVATION COMMISSION,**

Respondent-Appellee,

and

**NEW MEXICO OIL CONSERVATION DIVISION,**

Intervenor-Appellee,

**IN THE MATTER OF THE PROPOSED AMENDMENTS TO THE COMMISSION'S RULES ON FINANCIAL ASSURANCE AND PLUGGING AND ABANDONMENT OF WELLS, 19.15.2, 19.15.8 AND 19.15.25 NMAC STATEWIDE.**

**and (consolidated for purpose of opinion)**

**No. A-1-CA-38814**

**LARRY MARKER,**

Applicant-Appellant,

v.

**NEW MEXICO OIL CONSERVATION COMMISSION,**

Respondent-Appellee,

and

**NEW MEXICO OIL CONSERVATION DIVISION,**

Intervenor-Appellee,

**IN THE MATTER OF PROPOSED AMENDMENTS TO THE COMMISSION'S RULES ON COMPLIANCE AND ENFORCEMENT, 19.15.5 NMAC; STATEWIDE.**

**APPEAL FROM THE NEW MEXICO OIL CONSERVATION COMMISSION**
**Adrienne Sandoval and Heather Riley, Chairs**

Larry Marker
Albuquerque, NM

Pro Se Appellant

New Mexico Energy, Minerals and Natural Resources Department
William R. Brancard, Special Assistant Attorney General
Santa Fe, NM

for Appellee in No. A-1-CA-37860

Hector H. Balderas, Attorney General
Christopher Moander, Assistant Attorney General
Sally Malave, Assistant Attorney General
Santa Fe, NM

for Respondent-Appellee in No. A-1-CA-38814

New Mexico Energy, Minerals and Natural Resources Department
William R. Brancard, Special Assistant Attorney General
Eric Ames, Special Assistant Attorney General
Santa Fe, NM

for Intervenor-Appellee in No. A-1-CA-38814

**MEMORANDUM OPINION**

**HANISEE, Chief Judge.**

**{1}** Petitioner Larry Marker (Petitioner)[1], a self-represented litigant, appeals the New Mexico Oil Conservation Commission's (the Commission) rulemaking action amending the rules of financial assurance. Petitioner broadly alleges that in adopting the rule, the Commission acted arbitrarily and capriciously, failed to consider substantial evidence, and violated rulemaking procedures. Finding no error on the part of the Commission, we affirm.

## BACKGROUND

**{2}** The New Mexico Oil and Gas Act (the Act), NMSA 1978, §§ 70-2-1 to -39 (1935, as amended through 2019), provides concurrent jurisdiction and authority to the Commission and the Oil Conservation Division of the Energy, Minerals and Natural Resources Department (the Division) and broadly empowers the agencies to regulate oil and gas operations in the State. *See* § 70-2-6(B). The Act requires the Commission to be comprised of three members, two of whom must possess expertise in the areas they regulate. *See* § 70-2-4. The third member of the Commission additionally serves as the director of the Division and must be a registered petroleum engineer or "by virtue of education and experience have expertise in the field." Section 70-2-5(B)(3). The agencies are concurrently empowered to prevent waste, protect correlative rights, enforce rules and regulations, and "do whatever may be reasonably necessary to carry out the purpose of [the A]ct." Section 70-2-11(A).

**{3}** As a precondition to drilling or producing a well, the operator of the well must provide financial assurance to the Division, which runs "to the benefit of the state and [is] conditioned that the well be plugged and abandoned" upon cessation of use. Section 70-2-14(A). Plugging refers to the act of permanently closing an abandoned well. The purposes of well plugging requirements are to stop waste from escaping a well and to prevent the pollution of fresh water supplies. Nancy Saint Paul, *Summers Oil and Gas*, § 4:42 Plugging of Abandoned Oil Wells (3d. ed. Nov. 2020). The Act authorizes the Commission to promulgate rules concerning the requirement for financial assurance "conditioned for the performance of the rules[.]" Section 70-2-12(B)(1). "If any of the requirements of the [Act] or the rules promulgated pursuant to the [A]ct have not been complied with, the [Division], after notice and hearing, may order any well plugged and abandoned by the operator[.]" Section 70-2-14(B). The Act mandates two categories of financial assurance for active wells: (1) a blanket plugging financial assurance for temporarily abandoned wells and (2) one-well plugging financial assurance "in amounts determined sufficient to reasonably pay the cost of plugging the wells covered by the financial assurance," which is required for any well that has been held in temporarily abandoned status for more than two years. Section 70-2-14(A). In 1977, the Legislature established a cap of $50,000 for blanket financial assurance in 1977. 1977 N.M. Laws, ch. 237, § 3. In 2018, the Legislature amended the cap on blanket assurance to $250,000. 2018 N.M. Laws, ch. 16, § 2. To implement the increase, the Commission proposed four tiers of blanket plugging financial assurance: (1) $50,000 for operators

---

1This opinion resolves case numbers A-1-CA-37860 and A-1-CA-38814. Because these cases raise related issues arising from the same rule amending financial assurance and the relevant rulemaking procedures, we consolidate the cases for decision. Rule 12-317(B) NMRA.

with one to ten wells, (2) $75,000 for operators with eleven to fifty wells, (3) $125,000 for operators with fifty-one to one hundred wells, and (4) $250,000 for operators with more than one hundred wells.

**{4}** On March 28, 2018, the Division filed an application for rulemaking with the Commission to amend the rules governing financial assurance. At a public meeting held on April 12, 2018, the Commission voted to hold a public hearing on the proposed rule. Although the hearing was originally scheduled for May 24, 2018, it was continued to July 19, 2018. The Commission provided public notice of both. During two days of hearings on July 19 and 20, 2018, the Division presented two technical witnesses who explained and supported the proposed rule changes. The Division also offered exhibits in support of the proposals. Two members of the public, Petitioner and Rory McFinn, also testified at the hearing and raised concerns about the financial impact of the proposed rule for low-volume operators. Petitioner proposed an amendment of $5,000 plus an additional $2 per foot for one-well financial assurance.

**{5}** Independent Petroleum Association of New Mexico (IPANM), the sole intervening party to the proceedings, offered modifications to the amended blanket insurance rule and proposed a blanket bond of $25,000 less for each tier than what was required under the prior rules for operators with one to ten wells. Responding to requests from the Commission, the Division provided exhibits comparing the impacts of IPANM and Petitioner's proposed modifications to the tiers on current operators. The Commission commenced deliberations on July 20, 2018, and after reviewing the proposed rule changes, the modifications submitted by IPANM and Petitioner, and the evidence presented at the hearing, the Commission adopted the amended rule as Order R-14834 (the Order) on August 20, 2018.

**{6}** Pursuant to Section 70-2-25(A), Petitioner submitted a request for a rehearing with the Commission on September 6, 2018. Although Petitioner was not technically eligible for a rehearing as he was not a party to the proceedings, the Commission voted to conduct a rehearing limited to the applicability of the financial assurance rule to wells requiring federal assurance, and in doing so allowed Petitioner to become a party. The Commission also ordered the Division to propose amendments to 19.15.8 NMAC, which addressed the application of financial assurance requirements on federal wells. The rehearing was conducted on November 15, 2018, was attended by Division personnel, and included appearances by IPANM and Petitioner. At the rehearing, the Division also proposed an additional rule revision—wells requiring federal assurance would be excluded from the calculations used to determine the tiers of blanket-financial assurance. Petitioner supported this revision but raised his continued concerns about the difficulty for small operators to comply with the revised tiers for blanket bonds. The Commission voted to adopt the rule changes based on the Division's proposal, including the revision to exclude wells requiring federal financial assurance. Further applications for rehearing were submitted by Petitioner and denied as a matter of law by the Commission. The rule changes became effective on January 15, 2019, and this appeal followed.

**DISCUSSION**

**{7}**     Although Petitioner's arguments on appeal are at times unclear and unsupported, we understand them to be as follows: (1) the amendment was not supported by substantial evidence; (2) the adoption of the rule was arbitrary and capricious; (3) the Commission did not follow the required rulemaking procedure; and (4) the Commission violated procedural due process. Petitioner requests that we void and rescind the Order of the Commission and allow the Division to repetition the Commission. The Commission answers that the rule changes were supported by substantial evidence, were not arbitrary and capricious, and followed required rulemaking procedures.

**Standard of Review**

**{8}**     In reviewing an administrative order on its merits, we conduct the same review as the district court sitting in its appellate capacity. *See Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806. Thus, we determine: "(1) whether the agency acted fraudulently, arbitrarily, or capriciously; (2) whether based upon the whole record on review, the decision of the agency is not supported by substantial evidence; (3) whether the action of the agency was outside the scope of authority of the agency; or (4) whether the action of the agency was otherwise not in accordance with law." Rule 1-075(R) NMRA. An agency's action is arbitrary and capricious if it is "unreasonable or without a rational basis, when viewed in light of the whole record." *Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 17, 137 N.M. 161, 108 P.3d 1019 (internal quotation marks and citation omitted). "Special weight will be given to the experience, technical competence and specialized knowledge of the Commission." *Viking Petroleum, Inc. v. Oil Conservation Comm'n*, 1983-NMSC-091, ¶ 8, 100 N.M. 451, 672 P.2d 280.

**I.      The Commission's Decision Was Supported by Substantial Evidence and Was Not Arbitrary and Capricious**

**{9}**     Petitioner asserts that the amended rules regarding one-well financial assurance and blanket financial assurance were not supported by substantial evidence. The Commission answers that its rule changes were "clearly supported by substantial evidence in the record."

**{10}**     We review the whole record in the light most favorable to the Commission's decision to determine whether substantial evidence supports the decision. *See Duke City Lumber Co. v. N.M. Env't Improvement Bd.*, 1984-NMSC-042, ¶¶ 13-14, 101 N.M. 291, 681 P.2d 717. "When applying whole record review, the reviewing court views the evidence in the light most favorable to the agency decision, but may not view favorable evidence with total disregard to contravening evidence." *Herman v. Miners' Hosp.*, 1991-NMSC-021, ¶ 6, 111 N.M. 550, 807 P.2d 734 (internal quotation marks and citation omitted). "To conclude that an administrative decision is supported by substantial evidence in the whole record, the court must be satisfied that the evidence demonstrates the reasonableness of the decision, and that no part of the evidence may

be exclusively relied upon if it would be unreasonable to do so." *N.M. Att'y. Gen. v. N.M. Pub. Regul. Comm'n*, 2013-NMSC-042, ¶ 29, 309 P.3d 89 (alterations, internal quotation marks, and citation omitted).

**{11}** We first address the Commission's amendment of the one-well financial assurance rule. Petitioner disputes the cost of plugging an abandoned well and argues that the amended financial assurance requirements exceed the "amount sufficient to reasonably pay the cost to plug a well." The Commission answers that based on evidence presented at the hearing, it determined that the prior one-well assurance formula "did not accurately reflect the actual cost to the State of plugging and reclaiming a well." To determine the proper formula for one-well financial assurance, the Commission reviewed data regarding the costs to the State, including an exhibit demonstrating the cost of plugging the wells of various depths over a four-year period, and requested that the Division propose a new formula to determine the actual costs of plugging a well. The Division proposed $25,000 plus $2 per foot of the well's depth, and provided additional charts comparing this formula to the actual costs. Petitioner proposed his own formula of $5,000 per well and $2 per foot for active wells. The Commission ultimately determined that the formula proposed by the Division would provide financial assurance "sufficient to reasonably pay the cost of plugging the wells" consistent with the statutory requirement. *See* § 70-2-14(A).

**{12}** Turning to the blanket financial assurance rules, Petitioner similarly asserts that because the Division "provided no explanation or reasoning substantiating the amount of assurance required by each category of operator[,]" the amendment of the blanket financial assurance rule was not supported by substantial evidence. Petitioner also argues that the amended rule places an unequal regulatory and financial burden on operators with fewer wells. The Commission answers that the Division specifically chose a tiered approach because it would have a lesser financial impact on smaller operators.

**{13}** In considering whether to adopt the blanket financial assurance rules, the Commission considered evidence from the Division about how many existing operators would fall into each of the tiers. It also considered the proposals offered by IPANM and Petitioner, ultimately determining that each of their proposals was insufficient to cover the regulatory costs of plugging and reclaiming wells. The Division also provided exhibits demonstrating the impact on each operator under each of the proposals offered. Thus, we determine that the Commission's amendment of the rules was supported by substantial evidence.

**{14}** Petitioner alleges that the four tiers of financial assurance are "arbitrary" because the Division provided no basis for the establishment of such tiers. However the fact that tiers were based on a given operator's volume of wells, demonstrates the Commission's effort to promulgate rules that differentiated between ownership types.

**{15}** When reviewing an agency's rulemaking decision, we apply a deferential standard. *See Earthworks' Oil & Gas Accountability Project v. N.M. Oil Conservation*

*Comm'n*, 2016-NMCA-055, ¶ 11, 347 P.3d 710. "An agency's rule-making function involves the exercise of discretion, and a reviewing court will not substitute its judgment for that of the agency on that issue where there is no showing of an abuse of that discretion." *Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 7, 288 P.3d 902 (internal quotation marks and citation omitted). A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or without a rational basis when viewed in light of the whole record. *See Snyder Ranches, Inc. v. Oil Conservation Comm'n*, 1990-NMSC-090, ¶ 5, 110 N.M. 637, 798 P.2d 587. Although an administrative agency is required to explain its decision to adopt a new rule, *see Earthworks' Oil & Gas Accountability Project*, 2016-NMCA-055, ¶ 12, the Commission need not state its reasons for adopting each provision in a rule or respond to all concerns raised in testimony; such a requirement would be "unduly onerous." *Regents of Univ. of Cal. v. N.M. Water Quality Control Comm'n*, 2004-NMCA-073, ¶ 13, 136 N.M. 45, 94 P.3d 788. "The party challenging a rule adopted by an administrative agency carries the burden of showing that the rule is arbitrary or capricious by demonstrating that the rule's requirements are not reasonably related to the legislative purpose." *Earthworks' Oil & Gas Accountability Project*, 2016-NMCA-055, ¶ 11 (alteration, internal quotation marks, and citation omitted).

**{16}** Petitioner contends that the Commission's decision was arbitrary and capricious because the Division "provided no evidence that implementing the proposed increases in financial assurance will advance a legitimate government interest." We disagree. The Commission acted in accordance with its statutory directive to increase the cap on blanket bonds to $250,000, which it did. *See* 2018 N.M. Laws, ch. 16, § 2. Regarding one-well financial assurance, the legislative mandate required the financial assurance to be "in amounts determined sufficient to reasonably pay the costs of plugging the wells[.]" Section 70-2-14 (A). Not only is the Commission's order consistent with such mandate, but our review of the record indicates that the Commission stated sufficient reasons for the amendments. *See ERICA, Inc. v. N.M. Regul. & Licensing Dep't*, 2008-NMCA-065, ¶ 11, 144 N.M. 132, 184 P.3d 444 (stating that "we afford administrative agencies considerable discretion to carry out the purposes of their enabling legislation, and we give deference to an agency's interpretation of its own regulations" (internal quotation marks and citation omitted)). Petitioner does not demonstrate or identify any specific deficiency in the evidence proffered during the 2018 rulemaking to suggest that the Commission's actions were arbitrary and capricious. *See Santa Fe Expl. Co v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶¶ 10-11, 114 N.M. 103, 835 P.2d 819 (assertions must be accompanied by citations in the record). We see no indication of arbitrary or capriciousness in this circumstance. Rather, under our standard of review, the Commission's amendment of the financial assurance rules was "reasonably related to the legislative purpose" of ensuring that the State has adequate resources to plug abandoned wells. *Earthworks' Oil & Gas Accountability Project*, 2016-NMCA-055, ¶ 11 (alteration, internal quotation marks, and citation omitted); *see* § 70-2-14 (A).

**{17}** For these reasons, we hold that the evidence was sufficient to support the Commission's findings, and the Commission's decision to amend the rules was not arbitrary or capricious.

## II. The Commission Followed Required Rulemaking Procedures

**{18}** Petitioner asserts that the Commission violated "several rules of administrative procedure during the rulemaking hearings." He argues that in publishing its notice of hearing only in the Albuquerque Journal, the Commission violated its procedural requirements. Petitioner also contends that the Albuquerque Journal is not a proper publication and the proper newspaper would be one within a county or counties with oil and gas activity. In arguing that the Commission failed to meet the notice requirements, Petitioner asserts that the notice rules for adjudicatory hearings, rather than rulemaking hearings, should have been applied. We disagree.

**{19}** "[T]he distinction between individualized fact-based deprivations, that are protected by procedural due process, and policy-based deprivations of the interests of a class, that are not protected by procedural due process underlies both the distinction between legislation and judicial trial and the distinction between rulemaking and adjudication." *Miles v. Bd. of Cnty. Comm'rs*, 1998-NMCA-118, ¶ 8, 125 N.M. 608, 964 P.2d 169 (alterations, omission, internal quotation marks, and citation omitted). This distinction was clarified long ago in *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 445 (1915). In *Bi-Metallic*, Justice Holmes stated, "[w]here a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole." *Id.* "Thus, when government action is concentrated on a relatively small number of persons, based on individual grounds, then the dictates of constitutional due process require individualized notice and an opportunity to be heard." *Miles*, 1998-NMCA-118, ¶ 9. "However, when the matter concerns general statutes or other enactments in which all are equally concerned, notice and an opportunity to be heard may not be constitutionally required." *Id* (internal quotation marks and citation omitted).

**{20}** The Act requires the Division to create rules governing the procedures to be followed in proceedings before it. Section 70-2-7. Before any rule, regulation, or order is adopted the Commission must first hold a hearing on the matter. *See* § 70-2-23. The Commission must, no less than ten days prior to the hearing, give "reasonable notice" that a hearing is taking place. *Id.* The " 'reasonable notice' mandate should circumscribe whatever . . . rules are promulgated for the purpose of notifying interested persons." *Johnson v. N.M. Oil Conservation Comm'n*, 1999-NMSC-021, ¶ 23, 127 N.M. 120, 978 P.2d 327.

**{21}** The Commission's rulemaking procedures are governed by the New Mexico Rules Act, as well as the Commission's own procedural rules. *See* NMSA 1978, § 14-4-5.8 (2017). Notice of rulemaking hearings must include an explanation of the proposed rule, information on how a person may comment and when comments are due, and information on where the hearing will be held and how a person may participate. 19.15.3.9(B)(1)-(6) NMAC. The Commission shall distribute a notice of the rulemaking no later than 30 days prior to the hearing by:

(1) posting the notice on the division website; (2) posting the notice on the sunshine portal; (3) making the notice available in the division's district offices; (4) sending the notice by mail or electronic mail to persons who have made a written request for notice from the commission . . .; (5) providing the notice to the New Mexico legislative council . . .; and (6) publishing the notice in the New Mexico register and in a newspaper of general circulation in the state.

*See* 19.15.3.9(A) (1)-(4) NMAC.

**{22}** In the present case, the Commission satisfied the notice requirements. Notice was published in the New Mexico Register, posted on the agency website, sent to agency field offices, mailed to persons on the agency's mailing list, mailed to the legislative council, posted on the sunshine portal, and published in the Albuquerque Journal. All notices were timely. Although Petitioner contends that the Albuquerque Journal is not the proper newspaper, under its procedural rules, the Commission is only required to publish notice in a "newspaper of general circulation in the state." 19.15.3.9(A)(6) NMAC. The Commission clearly satisfied this requirement.

**{23}** Petitioner also alleges that the Commission failed to follow the rulemaking procedures by not providing a public comment period prior to the conclusion of the hearing. He contends that because it was "aware that that deliberations had commenced on July 19th," the Commission was subject to additional notice and publication rules before continuing its hearings the following day. The Commission answers that "no party requested that the record remain open for additional submissions, nor was the issue discussed during the hearing." (Emphasis omitted.) We disagree. Petitioner points to 19.15.3.13(B) NMAC, which provides "[i]f, during deliberations, the commission determines that additional testimony or documentary evidence is necessary for a proper decision on the proposed rule change, the [C]ommission may reopen the hearing for additional evidence after notice[.]" Although the Commission did request further information from the parties to better understand the competing proposals, the information was presented during the hearing. Moreover, the initial notice explicitly provided that the hearing may be continued to following days if not completed. While Petitioner disputes that he had an opportunity to challenge the testimony, we disagree. Petitioner presented testimony and raised concerns about the potential cost of the amended rules. On the second day of the hearings, such as on the first day, each witness was subject to cross examination by the Commission and IPANM. Thus, we find no error on behalf of the Commission regarding its hearing procedure.

**{24}** Turning to the rehearing, Petitioner argues that the Commission failed to provide an explanation for limiting the scope of the rehearing to the issue of including wells that require federal financial assurance in determining the tiers of blanket assurance. Petitioner asserts that because the Commission failed to provide a reason for limiting the scope of rehearing, Petitioner was prevented from having a "legitimate opportunity to challenge the order to limit the scope of the rehearing." We disagree. Petitioner had

an opportunity to provide comment on the issue of federal wells in the comment period prior to the hearings, during the initial hearing, and at the rehearing. Although the scope of the rehearing was limited to the issue of including such wells in determining tiers, the Commission permitted Petitioner, and other operators, to provide further testimony regarding the blanket bond tiers at the rehearing. Moreover, the Act empowers the Commission to "grant or refuse [an application] for rehearing *in whole or in part* within ten days after the application is filed[.]" Section 70-2-25(A) (emphasis added). Nothing in the Act requires the Commission to provide a reason for limiting the issues on a rehearing. "We may only add words to a statute where it is necessary to make the statute conform to the [L]egislature's clear intent, or to prevent the statute from being absurd." *State v. Maestas*, 2007-NMSC-001, ¶ 15, 140 N.M. 836, 149 P.3d 933. If a rehearing is granted, the Commission may "enter a new order or decision after rehearing." Section 70-2-25(A). We see no basis to determine that the Commission exceeded its statutory discretion in holding a rehearing, limiting the rehearing issues, and permitting Petitioner to provide testimony relating to those issues.

**{25}**    For these reasons, we hold that the Commission followed the proper rulemaking procedures.

### III.    The Commission Acted in Accordance With the Law

**{26}**    Throughout his briefing, Petitioner broadly raises Constitutional claims. Although they are generally unclear and unsupported, we understand his arguments to be as follows: (1) the Commission's actions violated Petitioner's Constitutional right to due process because the hearings were unfairly biased and (2) the rules have a retroactive application on his "vested rights."[2]

### A.    The Commission Did Not Violate Petitioner's Right to Procedural Due Process

**{27}**    Throughout his briefs, Petitioner broadly alleges that his constitutional right to due process was violated. Although his arguments are generally unsupported, Petitioner alleges two due process violations: (1) because the director of the Division also serves as chair of the Commission, procedural due process was violated, and (2) the Commission and Division demonstrated bias towards individual operators.[3] Relying on

---

[2]Petitioner asserts that the Commission failed to comply with the Small Business Regulatory Relief Act because it did not demonstrate that it provided a copy of the amended rules to the Small Business Regulatory Advisory Commission (the SBRAC) and failed to present evidence that it considered regulatory methods that accomplished the purpose of the Oil and Gas Act while minimizing the effects on small business. Our review of the record indicates that the Commission did consider minimizing the effects on small businesses. For example, the Commission's final order states: "By not unreasonably burdening small operators who could be forced to plug low volume wells, the proposal avoids potential waste." The SBRAC also "found no adverse effects on small businesses" in considering the proposed amendments.

[3]Petitioner additionally asserts that because he was denied an opportunity to challenge the testimony of the Division's witness, his right to procedural due process was violated. Because we previously determined that he was afforded such an opportunity, we decline to address this argument under a due process analysis.

*Livingston v. Ewing*, 1982-NMSC-110, ¶ 14, 98 N.M. 685, 652 P.2d 235, in which we stated, "[t]here is no fundamental right to notice and hearing before the adoption of a rule; such a right is statutory only[,]" the Commission answers that procedural due process does not apply to rulemaking proceedings. The Act provides that the director is a member of the Commission, § 70-2-4, and has a duty to prevent waste. Section 70-2-6(A). "[T]he [C]ommission, [is] to be composed of a designee of the commissioner of public lands, a designee of the secretary of energy, minerals and natural resources[,] and the director of the oil conservation division. Section 70-2-4. "A strong presumption of constitutionality underlies each legislative enactment," *State v. Gutierrez*, 2020-NMCA-045, ¶ 28, 472 P.3d 1260 (internal quotation marks and citation omitted), *cert granted*, 2020-NMCERT-___ (No. S-1-SC-38367 & No. S-1-SC-38368, Sept. 8, 2020), thus we presume that the establishment of the Commission and the Division is constitutional. "The party challenging the legislation . . . bears the burden of demonstrating that the law is unconstitutional." *Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶ 10, 378 P.3d 13. "A statute will not be declared unconstitutional unless the court is satisfied beyond all reasonable doubt that the [L]egislature went outside the constitution in enacting the challenged legislation." *Benavides v. E. N.M. Med. Ctr.*, 2014-NMSC-037, ¶ 43, 338 P.3d 1265 (internal quotation marks and citation omitted).

**{28}** "At a minimum, procedural due process requires that before being deprived of life, liberty, or property, a person or entity be given notice of the possible deprivation and an opportunity to defend." *Santa Fe Expl. Co.*, 1992-NMSC-044, ¶ 14. "Before a procedural due process claim may be asserted, the plaintiff must establish that he was deprived of a legitimate liberty or property interest and that he was not afforded adequate procedural protections in connection with the deprivation." *Titus v. City of Albuquerque*, 2011-NMCA-038, ¶ 40, 149 N.M. 556, 252 P.3d 780 (internal quotation marks and citation omitted). "Due process safeguards are particularly important in administrative agency proceedings . . . where the administrative agency adjudicates or makes binding rules that affect the legal rights of individuals or entities." *Santa Fe Expl. Co.*, 1992-NMSC-044, ¶ 14.

**{29}** Petitioner fails to identify a "legitimate liberty or property interest" of which he was deprived. *Titus,* 2011-NMCA-038, ¶ 40. While the amended rules may require Petitioner to provide greater financial assurance, they do not deprive him of any property or business interest. As explained above, Petitioner was provided reasonable notice, a comment period, and the opportunity to present testimony at both the hearing and rehearing, consistent with his statutory right. *See* 19.15.3.9(A) NMAC.

**{30}** Petitioner additionally asserts that the Commission and Division director "made statements that show an attitude of contempt and disdain toward individual operators or a particular classification of operators as a group," in violation of due process. We remain unpersuaded. The basic principles of trials apply to administrative proceedings. *See Reid v. N.M. Bd. of Exam'rs in Optometry*, 1979-NMSC-005, ¶¶ 7-8, 92 N.M. 414, 589 P.2d 198. The trier of fact must be unbiased and may not have a predisposition regarding the outcome of the case. *See id.*; *see also Lujan v. N.M. State Police Bd.*, 1983-NMSC-062, ¶¶ 9-10, 100 N.M. 149, 667 P.2d 456 (upholding the termination of a

state police employee who appealed the state police board decision based on the chairman's possible bias). "The inquiry is not whether the [agency] members are actually biased or prejudiced, but whether, in the natural course of events, there is an indication of a possible temptation to an average [person] sitting as a judge to try the case with bias for or against any issue presented[.]" *Reid*, 1979-NMSC-005, ¶ 7. Petitioner points to no statements in the record that demonstrate bias, nor does he offer any further support of bias other than his own perception. Because "[w]e will not search the record for facts, arguments, and rulings in order to support generalized arguments," we cannot conclude here that the record demonstrates any bias by the Commission or Division director. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 (holding that arguments were "surface presentations" and did not meet the appellant's burden on appeal).

## B.      The Amended Rules Do Not Apply Retroactively

**{31}**    Throughout his briefs Petitioner asserts that the amended rules were "illegally implemented" because they apply retroactively. Petitioner argues that because operators consider regulatory costs in deciding whether to acquire or invest in a property, a retroactive application of the amended financial assurance rules would produce inequitable results. However, Petitioner fails to explain how the amended statute operates retroactively. Contrarily, the rule changes specifically provide for prospective application.

**{32}**    "[S]tatutes, except those dealing with remedial procedure, are to be construed as prospective rather than [retroactive] unless there is a clear legislative [intent] to the contrary." *Grygorwicz v. Trujillo*, 2006-NMCA-089, ¶ 10, 140 N.M. 129, 140 P.3d 550 (internal quotation marks and citation omitted). "Statutes which have the effect of taking away or impairing vested rights acquired under existing laws, or creating new obligations, imposing new duties . . . relating to transactions or considerations already past, are generally deemed to be retroactive." *City of Albuquerque v. State ex rel. Vill. of Los Ranchos de Albuquerque*, 1991-NMCA-015, ¶ 33, 111 N.M. 608, 808 P.2d 58. "However, a statute does not operate retroactively merely because some of the facts or conditions which are relied upon existed prior to the enactment." *Id.* ¶ 34; *see, e.g.*, *Di Luzio v. City of Santa Fe*, 2015-NMCA-042, ¶ 21, 357 P.2d 401 (holding that the Occupational Disease Act modifying the burdens of proof did not apply retroactively to a workers' compensation claimant who filed for benefits two years after enactment of the act).

**{33}**    The amended rules state, "the 2018 amendments to 19.15.8.9 NMAC apply to applications for permits to drill, depend or plug back and applications for approved temporary abandonment filed on or after January 15, 2019, and for all other wells on April 15, 2019." 19.15.8(14)(C) NMAC. Although the amended rules apply to wells in existence at the time of amended rules enactment, the rules do not apply to such wells retroactively. The relevant inquiry to determine whether the statute was applied retroactively or prospectively is not whether Petitioner operated wells affected by the amended rules prior to the rules' enactment. Rather, the inquiry is whether the amended

rules create legal obligations for wells already operating prior to the enactment of the rules. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 269-70 (1994) (explaining that the proper inquiry is "whether the new provision attaches new legal consequences to events completed before its enactment"). Further, Petitioner points to no clear legislative intent that the amended rules should be applied retroactively. Indeed, during its proceedings, the Commission stated, "once the rule becomes effective it becomes effective for any new wells. Anybody wanting to drill a new well, they have to comply with this rule, but for people with existing wells, . . . there [would] be a delay." Because we determine that the statute does not apply retroactively and conclude that there is insufficient support of a procedural due process violation, we hold that the Commission acted in accordance with the law.

**CONCLUSION**

**{34}** For the foregoing reasons, we determine that there was no error on the part of the Commission.

**{35} IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**SHAMMARA H. HENDERSON, Judge**